## Strein *against* Zeigler.

Upon an indictment for forcible entry, and an acquittal of the defendants without any finding by the jury on the subject of costs, an action will not lie by a witness on behalf of the commonwealth, to recover his costs from the prosecutor who subpœnaed him.

ERROR to the Common Pleas of *Lancaster* county.

Michael Strein against George Zeigler's executors. This was an appeal from the judgment of a justice of the peace; and the following case stated, was agreed on by the parties concerned.

George Zeigler, the testator of the defendants, made complaint before Thomas Lloyd, Esq., a justice of the peace of Lancaster county, for a forcible entry and detainer against a certain John Wilson, Jr. and Reuben Mullison; upon which such proceedings were had by the justice, that the defendants, Wilson and Mullison, were bound to appear before the next Court of Quarter Sessions of the Peace, to be held at Lancaster on the 3d Monday of August 1834, to answer the said complaint. A bill of indictment, founded on said complaint, was preferred, and found " a true bill;" and the said George Zeigler having been endorsed as prosecutor upon the said bill, by order of the court, the defendants severally pleaded " not guilty," and were acquitted. The plaintiff, Michael Strein, was a witness subpœnaed by the said George, upon his behalf, in the prosecution above mentioned, against Wilson and Mullison, as well at the hearing before Thomas Lloyd, Esq., as before the Court of Quarter Sessions, whenever the case was for trial; having been bound over from time to time to testify; having also been at each time subpœnaed by George Zeigler, as a witness on his behalf, in the prosecution aforesaid, and attended in obedience to the subpœna that was served upon him, and recognizance aforesaid. The said Michael Strein attended as a witness on behalf of the said George Zeigler, at the hearing before the said Thomas Lloyd, Esq., one day; at the August Sessions, 1834, five days; at the November Sessions, 1834, three days; and at the January Sessions, 1835, four days. For this attendance, and the mileage allowed according to law, there is due to him the sum of $11.35. If, upon the foregoing statement of facts, the court shall be of opinion that the plaintiff is entitled by law to recover, then judgment in his favour for $11.35, with interest from the 23d of January 1835, and costs of suit, to be entered against the defendants, *de bonis testatoris;* but if the court shall be of a contrary opinion, then judgment to be entered in their favour.

This cause was argued, and the opinion of the court (Champneys, President) delivered on the 31st of December 1839, and judgment directed to be entered for the defendants.

*Montgomery* submitted the cause without argument, saying that his examination of the case had led him to the belief that the opinion of the court below was right.

*Frazer*, for defendant in error, was not heard.

PER CURIAM.—As the statute of Gloucester gave costs only in civil cases, and as an indictment, though prosecuted by an individual, is the suit of the crown, a prosecutor neither pays nor receives costs by that statute, or the common law. In England. the 25 G. 2. authorizes the courts to order him his costs out of the county treasury, on a conviction of felony; and the 18 G. 3. gives the same authority in cases of acquittal; but neither of these statutes has been in force here. We have indeed had very little legislation on the subject. The statutes of 1791 and 1797 changed the odious common law principle which left the accused to pay the costs, whether convicted or acquitted; but neither of them provided for the expenses of a private prosecutor. The Act of 1804 alone empowered the grand or petit jury to impose on him the costs of an unfounded prosecution; but in this instance the power was not exercised. If, then, an indictment of forcible entry is not a civil suit, this action does not lie. The motive for resorting to it is, with few exceptions, to redress a civil injury, and as the fine was mostly nominal, it was at one time not unusual for the attorney general or his deputies to appear for the accused; but this was by sufferance, and in cases where the force was unattended with outrage. Whether the practice continues still, we know not; perhaps it was not at any time strictly proper. But the indictment was, in all beside, attended with the incidents of a criminal prosecution. The attorney general, and the other officers, had the same fees, a fine was set upon conviction, the defendant was sentenced to pay the costs of prosecution, and stood committed till the sentence was complied with. The Act of 1700 directs the offence to be punished as a breach of the peace, and satisfaction to be made to the party injured; and the Act of 1810 undertook to settle, what had not been doubted, that jurisdiction lay with the Quarter Sessions. Besides this, we have all the British statutes on the subject, except the 5 R. Stat. 1., which our Act of 1810 was intended to supply; and there is therefore no colour to subject a prosecutor to payment of costs to the commonwealth's witnesses.

Judgment affirmed.