## Guffy *versus* The Commonwealth.

1. The great principle of trial by jury is, that the court shall determine the law, and the jury the facts.

2. In criminal cases, where the jury have a right to determine the law and the facts, they are to do so under the direction of the court, and with the single exception of an acquittal, the court have a right to grant a new trial, where the verdict is against evidence, or law.

3. It is no more in the power of the legislature, to alter the essential nature of a trial by jury, than it is to abolish it altogether.

4. The court have no power, in a criminal case, to grant a new trial, where the verdict is in favor of the defendant.

5. The Act of 8th December, 1804, authorizing the jury, in cases of acquittal, to determine by their verdict, whether the prosecutor, the county, or the defendant, should pay the costs, does not take away the common law supervision of the courts, which belongs to the trial by jury.

6. A decision of the jury, contrary to the direction of the court, and not subject to its revision, is not a verdict.

7. The court has a supervision over so much of a verdict in a criminal case, as relates to costs, notwithstanding an acquittal.

8. Where there is nothing in the testimony, to show that the prosecutor behaved improperly, and where there is no evidence of malice in the prosecution, it is the duty of the court to set aside a verdict against the prosecutor for costs.

ERROR to the Court of Quarter Sessions of *Westmoreland county.*

James Patterson, the prosecutor, made information before Justice Jacob M. Wise, of the county of Westmoreland, on the 15th day of March A. D. 1853, against Alexander Guffy, the plaintiff in error, charging him with having committed a forgery, in altering the date of a summons issued by Daniel Kunkel, Esquire, a justice of the peace in and for the county of Westmoreland, at the suit of *Alexander Guffy* v. *James Patterson*, executor of Lewellen Howell, deceased. Upon that information, a warrant was issued by Justice Wise, on the 16th

[Guffy v. The Commonwealth.]

day of March, 1853, for the arrest of Alexander Guffy; and James Patterson, on the day the information was made, entered into a recognizance to appear at the next Court of Quarter Sessions thereafter, and prosecute the said Alexander, for the crime of forgery. Alexander Guffy having learned that a warrant was in the hands of a constable for his arrest, voluntarily appeared before Justice Wise, on the 9th day of May, 1853, and entered into a recognizance, with two sureties, conditioned for his appearance at the next Court of Quarter Sessions thereafter, to answer the charge of forgery, made against him by James Patterson, the prosecutor. At the May Sessions, A. D. 1853, an indictment was preferred against the plaintiff in error, for forgery, on which the name of James Patterson was endorsed as prosecutor. That indictment was returned a true bill, by the grand jury. The trial of the case was afterwards continued until the August Sessions, A. D. 1853, Alexander Guffy being bound in a recognizance to appear at the August Sessions to answer the charge. On the 23d of August, 1853, the plaintiff in error pleaded not guilty to the indictment. The District Attorney *similiter* and issue, and on the same day the cause was tried—James Patterson appearing as the principal witness against the defendant, and a verdict of not guilty rendered by the jury, and that the prosecutor, James Patterson, pay the costs. On the trial of the cause the defendant called no witnesses, relying on his innocence, and the entire want of any evidence on the part of the prosecutor, to make out the charge preferred in the indictment. The court instructed the jury to return a verdict of not guilty, and added, that the question of costs was one exclusively for the jury, and that as the offence charged was a misdemeanor, they might impose the costs, either on the prosecutor, the county, or the defendant. The jury returned a verdict, acquitting the defendant, and that the prosecutor, James Patterson, pay the costs of prosecution.

After the verdict was rendered, a motion was made, to set aside the verdict, as far as costs were concerned. The court set aside the verdict, so far as the costs were concerned, and this is the error here complained of.

*Foster* and *Laird*, for plaintiff in error, referred to 1st and 2d secs. of Act of 8th December, 1804; Act of 10th March, 1818, and 9th February, 1820.

*Cowan*, for defendant in error, referred to *Commonwealth* v. *Duncan*, 4 S. & R. 449; *Playford* v. *Commonwealth*, 4 Barr, 144; *York Co.* v. *Jacobs*, 3 Penn. R. 365; *Strein* v. *Zeigler*, 1 W. & S. 259; *Clemens* v. *Commonwealth*, 7 Watts, 485.

[Guffy *v.* The Commonwealth.]

The opinion of the court was delivered December 15, 1853, by

LEWIS, J.—The great principle of the trial by jury is, that the *court* shall determine the *law* and the jury the *facts.* Even in criminal cases, where the jury have a right to determine the law and the facts, "they are to do so under the direction of the court," and with a single exception, the court have an undoubted right to grant a new trial where the verdict is against evidence or law. The only exception to the rule is, that where a defendant is acquitted in a criminal case, he shall not be put in jeopardy a second time for the same offence. This principle, from the necessity of guarding the liberties of the people against the power of the government, has been so applied as to deprive the court of the power to grant a new trial in a criminal case where the verdict is in favor of the defendant. In all other cases, the supervision of the court, in directing the admission or rejection of evidence, in giving instructions to the jury on matters of law, and in setting aside the verdict where it is contrary to the law or evidence, is an essential element in the trial by jury. These were the rights which belonged to that mode of trial, at the time when the Constitution of 1790 was adopted, and these rights are preserved in the provision in that instrument, that " the trial by jury shall be as *heretofore,* and the right thereof remain inviolate." It is no more in the power of the legislature to alter the essential nature of this trial, than it is to abolish it altogether. It is not only " to remain inviolate," but " it is to be as *heretofore.*" It follows that the Act of 8th December, 1804, authorizing the jury in cases of acquittal to " determine by their verdict whether the county or the prosecutor, or the defendant or defendants, should pay the costs of prosecution," cannot take away the common law supervision of the courts, which belongs to the trial by jury. The determination is to be made by " their verdict," and the use of that term shows that the decision was intended by the legislature, to be subject to the rules of law which govern verdicts in general. A decision of a jury, contrary to the direction of the court, and not subject to its revision, is not a *verdict.* The jury have the power to name the prosecutor; but if they name one against whom there is not a particle of evidence; one who was not the prosecutor, and who had no notice whatever of the proceedings, the injustice would be so monstrous, that it seems impossible to doubt, in regard to the power and the duty of the court to grant redress. So, if the jury should name as prosecutor, the justice who issued the warrant, the constable who executed it, or the District Attorney, who sent up the indictment, and prosecuted it, without any *other* evidence against them, except proof of the performance of their official duties,

the demand for a prompt and efficient remedy would be equally imperative. No man can suppose for a moment, that the legislature intended to place it in the power of the jury to impose severe penalties upon public officers for the faithful performance of their duties. If a man, upon full proof of the defendant's guilt of a most dangerous forgery of civil process, by means of which a judgment was unlawfully obtained, institutes a prosecution, and the only witness acquainted with the facts dies before the trial, and thereby the criminal escapes, it would be against law and evidence to order the prosecutor to pay the costs. We do not say that these are the facts of the case before us. It is not our duty to inquire into the facts which induced the court to decide that there was "nothing in the testimony to show that the prosecutor behaved improperly," and for that reason to set aside the verdict "so far as costs are concerned." It is sufficient for us to say that the court had a supervision over so much of the verdict as related to the costs, notwithstanding the acquittal. The preamble to the Act of 1804, shows that it was not intended to authorize the jury to punish innocent prosecutors, acting upon well founded grounds of belief, in preferring charges of a character which ought to be investigated. It was enacted expressly to prevent "restless and turbulent people" from "harassing the peaceable part of the community with *trifling, unfounded or malicious prosecutions.*" Where the prosecution is not "trifling," but one of a grave character; where it is not "unfounded," but founded upon probable cause existing at the time it was commenced, but afterwards fails by the death of material witnesses, and where there is no evidence of malice in the prosecution, it is the duty of the court to set aside the verdict against the prosecutor for the costs. In short, this is the duty of the court in all cases where "there is nothing in the testimony to show that the prosecutor behaved improperly." The court had a discretionary power over the subject, and it is clear that matters within the discretion of the court below, are not the subjects of review here.

It is no answer to this argument, to say that the defendant will be deprived of his rights under the statute, if the action of the court below be sustained ; for he had no rights vested before sentence pronounced, and he has ample remedy, by action, against the prosecutor, if the prosecution was without probable cause. Nor is it a sufficient reason for imposing the costs upon an innocent person, that the witnesses for the prosecution may be without remedy for their fees. It is "better that ninety-nine guilty escape, than that one innocent man should suffer;" it is surely better that each person should contribute the money, trouble, and expense which falls upon him

[Guffy *v.* The Commonwealth.]

in promoting the justice of the country, than that all the charges should be imposed unjustly upon one. The supposed hardship might be remedied, by a suitable construction of the law; but if not, it is no greater than has frequently happened under the same statute before; 4 S. & R. 541; 3 Penn. R. 365; 1 W. & S. 259; 7 W. 485; Bright. Sup. 1849, p. 188. These hardships cannot outweigh the principles of public policy, which require that prosecutions, founded upon probable cause, for offences which endanger the rights of the people, ought not to be discouraged, by intimidating officers or citizens, nor can they weigh a feather in opposition to the maxim, "*Fiat justitia ruat cœlum.*"

It is thought by some that the decision of the jury ought to be conclusive, right or wrong, whether made upon sufficient evidence and due notice, or without either, upon the ground that their decision is as likely to be correct as that to be pronounced by the court. We have no disposition to claim for the court what does not properly belong to it, or to disparage the great merits of the jury. But it is surely not unreasonable to suppose that those who have devoted their lives to the study and the practice of the law, and who have been selected by the sovereign authority of the nation, for their wisdom, integrity and experience, are less liable to err than men drawn by lot, without especial reference to their qualifications, who may be, and generally are, unacquainted with the law, and whose necessary attention to other avocations prevents them from gaining any great experience in the business of administering justice. It would be as reasonable to expect judges to be good farmers, mechanics or physicians, as to expect persons of these pursuits to be learned and experienced jurists. The argument which excludes the supervision of the court in this case, would exclude it in all others. But the question is not an open one. It has been settled by the common law and by the Constitution. So that if we even concede to the jury a *higher* degree of integrity as men, and superior learning and experience as jurists, this does not authorize the courts to change the established rules of law, or to disregard the constitutional duties imposed upon them. While we should be careful to avoid the usurpation of powers not conferred, nothing can justify us in refusing to discharge the duties of a trust indisputably reposed by the people for their own protection.

Judgment affirmed.

Mr. Justice KNOX dissented, and delivered the following opinion:—Upon an indictment for a misdemeanor, the jury rendered a verdict of not guilty, and directed the prosecutor, naming him, to pay the costs.

[Guffy *v.* The Commonwealth.]

On behalf of the prosecutor, a rule was obtained upon the defendant, to show cause why the verdict, as far as the costs are concerned, should not be set aside. This rule was made absolute. The rule was asked for, upon the ground that there was nothing in the testimony to show that the prosecutor behaved improperly.

The question is, can the court interfere with the finding of a jury, as to costs, in cases of misdemeanor?

The Act of the 8th of December, 1804, provides as follows:—

"Sect. 1st. In all prosecutions, cases of felony only excepted, if the bill or bills of indictment shall be returned *ignoramus*, the grand jury who returned the same, shall decide and certify upon such bill, whether the county, or the prosecutor, shall pay the costs of prosecution; and in all cases of acquittals, by the petit jury, on indictments for the offences aforesaid, the jury trying the same shall determine, by their verdict, whether the county, or the prosecutor, or the defendant or defendants, shall pay the costs of prosecution; and the jury so determining, in case they direct the prosecutor to pay the costs, shall name him or them, in their return or verdict.

"Sect. 2d. Whenever any jury shall determine, as aforesaid, that the prosecutor, or prosecutors, shall pay the costs, the court in which the said determination shall be made, shall forthwith pass sentence to that effect, and order him, her, or them, committed to the jail of the county until the costs are paid, unless he, she, or they give security to pay the same within ten days."

The Act of the 9th of February, 1820, sect. 1st, enacts:— "That in all prosecutions, where the petit jury trying the same, shall acquit the defendant, or defendants, and shall determine by their verdict that the prosecutor shall pay the costs, the defendant's bill for his *subpœnas*, serving the same, and attendance of his material and necessary witnesses, shall be included in the costs, and paid accordingly: Provided the said bill shall be sworn to, taxed by the clerk, and allowed by the court trying the indictment."

In view of the provisions of the enactments quoted, it will hardly be denied that the legislature has given to the jury the exclusive power over the costs, in cases of misdemeanor, limited only as to the manner of the finding. If the verdict is guilty, of course it carries costs. If not guilty, they may impose them upon either the defendants, the prosecutors, or the county.

That the legislature might lawfully designate the tribunal in whose hands this power should be placed, is too clear for argument. Costs are the creatures of statutory regulations, depending entirely upon the will of the law-making power for their

[Guffy *v*. The Commonwealth.]

legal existence, which creative authority is subject to no super-
vision whatever.

It is said that the power in the hands of a jury, unless con-
trolled, is liable to be abused.   Grant it.   What power is not?
And is the abuse or wrongful application, a greater evil than
the usurpation of authority?

If the statute provided that the jury should only impose the
costs upon a prosecutor, when there was misconduct upon his
part, there would be some plausibility in asserting the right of
the court in a clear case, to say, that the jury had exceeded its
authority; but where the discretion is unlimited by terms, or
conditions of any kind, who shall retard its exercise?

Unlike the case of setting aside an entire verdict, and grant-
ing a new trial, here the action of the court is final, and the
effect is, that the officers, witnesses, and party, must lose their
costs, which they certainly are justly entitled to receive, from
some source.   To remedy a disputed wrong, an admitted one is
committed, which surely is not an advance in the administration
of justice.

For one, I think that the legislature acted wisely, in per-
mitting the jury to say by whom the costs should be paid in
criminal cases, of the grade of misdemeanors, and so far as my
experience goes, I am free to say, that it has almost universally
been applied, so as to promote the ends of justice; but were it
otherwise, the remedy is with the legislature, and not with the
courts.   We are not called upon in the case before us, to decide
whether the jury can legally impose costs upon a public prose-
cutor, such as the district attorney, or a constable, upon whose
return an indictment is found, or even upon a person who is a
stranger to the cause, for it is a conceded fact in this case, that
Patterson was the prosecutor in truth, and not merely named as
such by the jury.   It is alleged that he was guilty of no mis-
conduct.   Of this, however, we have not the means of judging;
and whether the court or the jury came to the correct conclu-
sion, is to us a sealed book.   I have no doubt, but that the
learned judge of the sessions, firmly believed that injustice was
done to the prosecutor by the finding of the jury, and I am
equally clear, that the jury, acting under the solemnities of their
oaths, rendered what they believed to be a true verdict.   I am
for letting it stand, because I think no one can legally disturb
it.   We shall best preserve our own rights, by being careful not
to encroach upon those of others.

I am authorized to add, that the chief justice concurs in this
*dissenting* opinion.