## Commonwealth *v.* Gaines.

*Grand jury—Actions of grand jury—Testimony of witnesses.*

1. A member of a grand jury cannot be questioned as to what the jury did, or what opinions its members expressed, but he may be questioned as to what a witness had testified to before the jury. A question should not be propounded to a grand juryman which would permit him to testify as to such matters as he has no right to disclose.

*Criminal law—Practice, Q. S.—Indictment—Attorney.*

2. Where the name of a witness is indorsed on an indictment the presumption of law is that the name was properly placed upon the indictment by the district attorney, and it is immaterial whether he placed the name there by the direction of the grand jury, or not.

3. Where a grand jury ignores an indictment and places the costs on a witness whose name was indorsed on the indictment, and who appeared before them, although another person was named as the prosecutor, the action of the court in refusing to set aside the finding of the grand jury as to costs will not be reversed by the appellate court in the absence of a manifest abuse of discretion.

4. In such a case where the court refuses to set aside the finding of the grand jury as to costs, and sentences the witness to pay the costs, but no exception is taken to the sentence, and no error assigned as to its legality, the appellate court cannot consider the action of the lower court in refusing to set aside the finding of the grand jury, inasmuch as such action does not legally injure the defendant. It is only by the sentence he is injured, if at all.

Argued Nov. 15, 1909. Appeal, No. 118, Oct. T., 1909, by Thompson Hudson, from order of Q. S. Chester Co., Jan. T., 1909, No. 111, refusing to set aside finding of grand jury as to costs in case of Commonwealth v. Frank Gaines and Harvey Bond. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Hearing on objections to the payment of costs imposed by a grand jury.

At the hearing when Joshua Hibberd, foreman of the grand jury, was on the stand he was asked this question:

"Q. When Mr. Paxson testified that one of the inducing facts for the action of the grand jury was the disgust——"

Mr. Gawthrop: I object to that question. There is no such testimony in the case. Exception. [1]

"Q. Was the previous record or action of Squire Thompson Hudson discussed before the grand jury?"

Mr. Gawthrop: We object to that.

Judge HEMPHILL: We will not go into what occurred before the members of the grand jury.

Mr. Pennypacker: "Q. Was the previous record or actions of Squire Hudson discussed before the grand jury?"

Mr. Gawthrop: We object to that. Exception. [2]

"Q. Were there any statements made by the members of the grand jury of facts and circumstances other than those that occurred in the case before you?"

Mr. Gawthrop: That is objected to. Exception. [3]

Objection sustained.

"Q. The district attorney has already testified that he it was who wrote the name of Thompson Hudson upon the back of that indictment. Was that writing so made by the district attorney .at the direction of the grand jury?"

Mr. MacElree: I object to that. Exception. [4]

Mr. Pennypacker: I offer in evidence the communication of Frank S. Paxson to the "Daily Local News," printed in their issue of February 16, 1909, and identified by Mr. Paxson.

The communication of Frank S. Paxson, secretary of the grand jury, printed in the "Daily Local News" issued on February 16, 1909, which was excluded by the court, is as follows:

" 'COATESVILLE, Feb. 16, 1909.

" 'Editor News:

" 'In last week's issue of The Oxford Press, the following false and undignified criticism of the recent Grand Jury appeared:

" 'The Grand Jury in their eagerness to punish Squire

Thompson Hudson of Hopewell, for pestering them with so many trivial cases, put the costs on him in an ignored case. They could not impose the costs on him as a magistrate, so they attempted to mulct him as a prosecuting witness. But when the Court came to look into the case, it was discovered that the Squire was not the prosecuting witness at all, and he of course escaped from paying the costs. It now looks as if one of the Grand Jurors in his eagerness to punish the Squire, signed his name to one of the complaints. The Squire was very angry when he found that an attempt had been made to trick him into paying the costs and he threatens to bring suit, it is said, to punish the alleged joker. The Squire did not have the costs to pay after all, and the joke is on the other fellow. Those who know the Squire remarked at the time that they did not believe he would allow himself to be caught by any such trick, and they guessed right.'

"The above criticism was from the West Chester Correspondent of The Press, and I trust, Mr. Editor, you will find room in the columns of your paper for the following:

"The Grand Jury in placing the costs in one case on Thompson Hudson, who happens to be a Justice of the Peace in the lower end of the County, and also was a witness before that body, in the case in question, did so believe and indeed they were instructed they had a right to do so by an officer of the Court. No doubt this Grand Jury was, and I learn many others before them have been, disgusted with some of the cases sent up to them from the Justice in question, placed the costs on him, thinking it would act as a deterrent in the future. They were not, as the correspondent says, eager to punish him. However, to be brief, the article is excepted to in general and particularly that portion of it that says: 'It now looks as if one of the Grand Jurors in his eagerness to punish the 'Squire signed his name to one of the complaints.' Now it seems to me this is an unwarranted assumption upon the part of the correspondent, and reflects very seriously

upon the members as individuals as well as a body, as he fails to state who that one member was.

"As a member of the recent Grand Jury, and secretary of that body, I am in a position to emphatically deny the statement that Hudson, or any other person's name was attached to any bill of indictment by any member of the Grand Jury. All names were on the bills when handed to us by the District Attorney. If Mr. Hudson, the West Chester correspondent of The Press, has or thinks he has evidence of any member of the Grand Jury tampering in any way or placing any names on bills of indictment it is that person's duty as a good citizen to name the offender and produce any evidence of his guilt he may possess.

"The insinuation in the Press article is slanderous on each member of the recent Grand Jury and to some it seems almost criminal to have such a false statement sent broadcast over the county. I am making this statement, Mr. Editor, without having seen the other members of the Grand Jury, believing they will substantiate it and uphold my action in thus answering the West Chester correspondent of The Oxford Press.

"Yours respectfully,

"FRANK S. PAXSON,<br>"Secretary of the late Grand Jury."

Judge HEMPHILL: That is the expression of an individual that happened to be on the grand jury. The grand jury speaks through its foreman as a body, and not as an individual.

Mr. Pennypacker: In that communication he says: "No doubt this Grand Jury was, and I learn, many others before them have been, disgusted with some of the cases sent up to them from the Justice in question."

Judge HEMPHILL: What bearing has that?

Mr. Pennypacker: Only to show the feeling of the grand jury towards Thompson Hudson.

Mr. Gawthrop: We object to that. It is a newspaper

report and we do not know that it is accurate.   Exception.

*Errors assigned* were (1–5) rulings on evidence; (6) in refusing to set aside findings of grand jury as to costs.

*Charles H. Pennypacker,* for appellant.—The action of the grand jury, confirmed by the court below, was such an abuse of discretion that this court should review and correct: Guffy v. Com., 2 Grant, 66; Com. v. Madden, 11 Pa. C. C. Rep. 459.

The members of a grand jury can testify as to the circumstances and the evidence which brought about their findings: Com. v. Green, 126 Pa. 531; Com. v. McComb, 157 Pa. 611.

*Robert S. Gawthrop,* district attorney, with him *Harris L. Sproat,* assistant district attorney, for appellee.—A grand juror may not testify how he or any member of the jury voted, nor what opinion any of them expressed in relation thereto nor to the act of either which might invalidate the finding of the jury: Gordon v. Com., 92 Pa. 216; Com. v. Green, 126 Pa. 531.

The argument of the appellant does not contend that the sentence was defective, but that the lower court was guilty of an abuse of discretion in sustaining the grand jury.   This in itself is sufficient reason for disregarding the sixth assignment: Com. v. Beale, 19 Pa. Superior Ct. 434.

By the Act of March 31, 1860, P. L. 427, the grand or petit jury has the right to designate the actual prosecutor and place the costs on him.   The cases in which such action has been set aside are those in which the person on whom the costs were imposed had not been called or had not been heard: Com. v. Anderson, 17 Pa. C. C. Rep. 89; Com. v. Ream, 1 Pa. C. C. Rep. 33; Com. v. Jackson, 1 Pa. C. C. Rep. 38; Guffy v. Com., 2 Grant, 66; Com. v. Madden, 11 Pa. C. C. Rep. 459.

OPINION BY MORRISON, J., April 18, 1910:

At the January Sessions, 1909, in Chester county, an indictment went before the grand jury in the above-entitled case and the record proper shows that Nora Williams' name was indorsed on the indictment as prosecutrix and that the name of Thompson Hudson was upon the indictment as a witness. The presumption of law is that his name was properly placed upon the indictment by the district attorney and that the grand jury would discharge its duty and call him and hear his testimony before ignoring the bill.   Moreover, it is a conceded fact that he went before the grand jury and testified.   The record proper shows that on January 27, 1909, the bill was ignored and the costs placed on the prosecutor, Thompson Hudson.   On the next day a rule was granted to show cause why the findings of the grand jury as to costs should not be vacated and set aside.   After argument, the court, on April 12, 1909, discharged the rule and sealed a bill for Thompson Hudson.   On May 10, 1909, the docket entries show that Hudson appeared before the court and was sentenced to pay the costs of prosecution, and he thereupon took this appeal.   We are not furnished with a copy of the sentence and so far as we can discover from the record it was not excepted to.

It is now familiar and well-settled law that grand jurors may be called to prove some things that may have taken place during their investigations, but as to other matters occurring before that body, it is not competent to interrogate a grand juror.

In Gordon v. Com., 92 Pa. 216, Mr. Justice MERCUR, speaking for the Supreme Court, said: "It must be conceded that the rule shall not be carried so far as to conflict with the juror's oath.   He shall not testify how he or any member of the jury voted, nor what opinion any of them expressed in relation thereto, nor to the act of either which might invalidate the finding of the jury.   His action, and the action of his fellow jurors, must be shown only by the returns which they make to the court.   What a witness has testified to before them is quite another matter."   The same principle is recognized in Com. v. Green, 126 Pa. 531.   In view of the

above rule we think it was incumbent on the counsel for
appellant to put upon the record, in plain terms, just what he
proposed or expected to prove by the foreman of the grand
jury, so the court could limit the testimony to such matters as
a grand juror has a right to disclose. Tested by this rule the
first three assignments of error are bad. In our opinion, each
and all of the questions embraced in said three assignments
might have called out improper testimony. Therefore, the
court was warranted in excluding the evidence and thus
avoiding invalidating the finding of the jury by incompetent,
evidence. The first three assignments are not sustained.

· The fourth assignment is in substance that the court erred
in not permitting the foreman of the grand jury to testify
whether or not the writing of the name of Thompson Hudson
upon the back of the indictment was so made by the district
attorney at the direction of the grand jury. This was wholly
immaterial. It is to be presumed that the district attorney
placed the name upon the indictment, and in addition to that
it is conceded that he wrote the name of Thompson Hudson
on the indictment. Suppose some of the grand jurors did
request the district attorney to place the name of Thompson
Hudson upon the back of the indictment; that officer would
have the right to comply with the request if his judg-
ment approved of it. The fourth assignment is not sus-
tained.

The indictment was ignored and the costs placed upon
Thompson Hudson on January 27, 1909, and on February 16,
1909, Frank S. Paxon, signing himself as secretary of the
late grand jury, wrote a long communication, relative to the
costs on said indictment, to a newspaper, and it was published.
This was long after the grand jury had transacted its business
and adjourned.

The fifth assignment complains of the court for not admit-
ting in evidence said communication. We can conceive of no
theory upon which it is competent evidence bearing on the
subject being investigated by the court, and the learned coun-
sel for the appellant has not suggested any convincing reason
in support of this assignment nor has he cited any authority

sustaining his proposition that said communication was evidence. The fifth assignment is not sustained.

The sixth assignment is that the court below erred in refusing to set aside the finding of the grand jury as to costs. This order of the court was made on April 12, 1909, and a bill of exceptions was sealed for the appellant. But in our opinion, on what is now before us, it was purely discretionary with the court as to whether or not it would set aside said finding of the grand jury. Where a matter rests in the sound discretion of the court below the appellate court will only reverse for a clear abuse of that discretion: Com. v. Edmiston, 30 Pa. Superior Ct. 54. In that case we said: "Where the motion to quash was based on an allegation of facts outside of the record proper, our revisory jurisdiction must necessarily be confined to a determination of the question arising upon the latter, taken in connection with the facts or the evidence duly brought upon the record by a bill of exceptions." In the present case there is nothing appearing in the record proper to convict the court of an abuse of discretion, nor is there any evidence duly brought upon the record by a bill of exceptions which establishes such abuse of discretion. Moreover, refusing to set aside the finding of the grand jury as to costs, without more, does not legally injure the defendant. It is the sentence which works such injury and which gives him the right to appeal. But there is no assignment of error as to the legality of the sentence, nor does it appear that any exception was asked for as to the sentence. Indeed, the sentence is not furnished to us.

In Com. v. Beale, 19 Pa. Superior Ct. 434, we held as stated in the syllabus: "On appeal, objection cannot be taken to the legality of the sentence in a criminal case where there is nothing on the record to show what exception had been taken to the sentence and the assignment of error does not set forth the sentence itself."

In Guffy v. Com., 2 Grant, 66, cited by appellant's counsel, the disposition of the costs was by the trial jury, hence the question came before the court directly and it was not an attempt to prove by a grand juror grounds on which to

impeach the return of the grand jury. The sixth assignment is not sustained.

The order of the court is affirmed and the appeal dismissed at the costs of the appellant.