## Commonwealth v. Mikula.

*Practice, Q. S.—Costs—Verdict of jury—Control by the court—Good faith of prosecutor.*

1. The verdict of a jury as to the disposition of costs in a prosecution for embezzlement is subject to the control of the court in its judicial discretion.

2. Where the prosecution was not trifling, but was instituted in good faith and founded upon probable cause, without malice or improper behavior, the court may set aside a verdict of the jury charging the costs to the prosecutor.

3. It appearing in this case that the prosecution was instituted for the protection of a worthy beneficial fund, with the encouragement of the consular representative of a foreign government, and with the assistance of the district attorney's office of the county, and it also appearing that to allow the verdict to stand would be an injustice to the society that was the prosecutor, the court set aside the verdict and directed that the county should pay the costs.

Motion to remit costs. Q. S. Montgomery Co., Feb. Sess., 1921, No. 94.

H. D. Saylor, for motion.

A. H. Hendricks, Assistant District Attorney, for Commonwealth.

H. I. Fox, County Solicitor, for county, contra.

Miller, J., Jan. 20, 1922.—The defendant was indicted on the charges of embezzlement and fraudulently converting property under the Act of May 18, 1917, P. L. 241. The bill was found at February, 1921, Sessions, and its trial was then continued until April. The case was again successively continued at the April, June and September Sessions and was not tried until November, when, after hearing the testimony, the district attorney moved that the bill be submitted for a verdict of not guilty. The motion was allowed and the jury were directed to acquit the defendant and given proper instructions for a disposition of the costs. They placed the latter upon Polish Alliance No. 543, of Pottstown, Pa., a corporation, which they found to have been the prosecutor

2 D. & C.

in the case. It now asks to have so much of the verdict as placed the costs on it set aside and to be relieved from their payment.

Perhaps nowhere better than in Guffy v. Com., 2 Grant, 66, are the supervisory, discretionary power and the duty of the court in cases of this class to be found defined. It is there said: "That the court had a supervision over so much of the verdict as related to the costs, notwithstanding the acquittal. The preamble to the Act of 1804 shows that it was not intended to authorize the jury to punish innocent prosecutors, acting upon well-founded grounds of belief, in preferring charges of a character which ought to be investigated. It was enacted expressly to prevent 'restless and turbulent people' from 'harassing the peaceable part of the community with trifling, unfounded or malicious prosecutions.' Where the prosecution is not 'trifling,' but one of grave character; where it is not 'unfounded,' but founded upon probable cause existing at the time it was commenced, but afterwards fails by the death of material witnesses, and where there is no evidence of malice in the prosecution, it is the duty of the court to set aside the verdict against the prosecutor for the costs. In short, this is the duty of the court in all cases where 'there is nothing in the testimony to show that the prosecutor behaved improperly.'" Also, see Com. v. Shaffer, 52 Pa. Superior Ct. 230, and the Act of April 14, 1905, § 2, P. L. 152. The provisions of section 62 of the Act of March 31, 1860, P. L. 427, which relate to the disposition of costs upon acquittal of the defendant, did not involve any material departure from the earlier statute of Dec. 8, 1804, 4 Sm. Laws, 204, relating to the same subject: Com. v. Bixon, 67 Pa. Superior Ct. 554, 557.

And in the recent case of Com. v. McCarthy, 67 Pa. Superior Ct. 135, it is said: "Where the petitioner had notice of the proceedings, was the real prosecutor, was not a public officer enjoined by his duty to the public to prosecute, and a conviction was not prevented by the death of a material witness—the reasons which should move a trial court to grant relief—it is not required to set aside the verdict, even though the prosecution was instituted in good faith and founded upon probable cause. Whether the verdict should or should not be set aside is a matter of discretion and not merely the performance of a ministerial duty."

This discretion of the court is, of course, in its nature judicial and is to be guided in its operation by the general principles that govern the exercise of judicial discretion: Com. v. Kocher, 23 Pa. Superior Ct. 65, 68; Com. v. Bixon, 67 Pa. Superior Ct. 554. Grant of the relief prayed for in this case is, therefore, not compulsory, but lies on its facts in our judicial, not arbitrary, discretion.

The Alliance decided, most creditably to it, to give a series of functions in Pottstown for the purpose of raising money for the relief of suffering in Poland, and the defendant, who was one of its members, was appointed chairman of the committee of arrangements. His duties were many and their proper performance required him to make several trips to Philadelphia to hire music and costumes and to attend to other details. The enterprise proved successful and a small portion of its proceeds came properly into the possession of the defendant. When it was over and settlement with him was attempted, he claimed that all of the receipts which were in his possession but partially reimbursed him for his outlays. Other members reasonably took exception to the propriety of some of his expenditures and to what they regarded as the excessive amounts of others. They became convinced that he purposed unworthily to enrich himself out of the moneys so worthily raised. A bitter dispute ensued and, during its progress, those adverse to the defend-

ant consulted a local justice of the peace, who advised the defendant's prosecution. Finally, after long negotiations, unable to obtain from the defendant any of the moneys in his hands, counsel was requested by the justice to prepare an information, and a warrant for his arrest was issued. The information was made by a committee of the Alliance. The case was returned to court on the advice of the district attorney, and, after many delays, for none of which the Alliance was responsible, at last called for trial. It was rightly disposed of it on the testimony, because, under it, the whole matter resolved itself into nothing more than a dispute concerning defendant's deductions, some of which were, as stated, charged by the Alliance to have been extravagant in amount, and others wholly improper, but all of which the defendant claimed to be proper and justified.

The costs were greatly swelled by the large number of witnesses subpœnaed, the great distances they had to travel and the many continuances of the case. The Alliance did not have private counsel to assist in its prosecution. Many of the Commonwealth's witnesses, who are members of the corporation, have released their fees and mileage.

It remains only to mention that it developed at the trial that during the negotiations with the defendant which preceded the issuance of the warrant, the president and treasurer of the Alliance, then in office, had made a settlement with him and paid to him the sum of $38.23 to cover the excess of his expenditures over his receipts, and that their action was afterwards repudiated by the Alliance and they were removed from office. Also, that the American Consul General of the Republic of Poland became interested in and encouraged defendant's prosecution.

We are of the opinion that, under these facts, the petitioner is entitled to the relief for which it prays. The enterprise out of which the trouble arose was inspired by the noblest impulses—the relief of those in suffering and distress. The Alliance was keen that the money it raised from the charitably disposed should not be eaten up by overhead, and was quick to resent that which had all the appearances of an effort by the defendant fraudulently to profit by his connection with the effort. His extravagant claims even exceeded his collections. His attitude had all the appearance of guilt under the Act of 1917. The Alliance was slow to act, however. It exhausted every effort to obtain a settlement. Much time was consumed. After it had failed, the matter was taken to a local justice of the peace. He was no more successful. The defendant was indifferent and defiant. The justice advised prosecution and the committee of the Alliance decided to act on the advice. The official had a lawyer prepare the information. After the warrant was issued, the case was held for a long time, because of defendant's promises of payment. He failed to keep these promises, was finally given a hearing and held for court, and the district attorney advised a return of the case. It was the object of much public interest and comment, and, as stated, even the American representative of the Polish Government gave encouragement to the Alliance in its efforts to obtain justice. After the great delay in the trial of the case, its outcome was not surprising.

The prosecution was not trifling under the circumstances, and was instituted in good faith and founded upon probable cause. The charges preferred ought to have been investigated. There was no evidence of malice or improper behavior on the part of the prosecutor. The assistant district attorney who tried the case joins in the application, which is opposed only by the county solicitor. This part of the verdict was a surprise to the trial judge, who expected the costs to be placed on the county. It can be explained only on the

theory that one or more members of the jury were possessed of the preconceived mistaken notion that, regardless of the facts of a case, the county, that is, the taxpayer, should not be visited with the payment of its costs. Injustice will be done by allowing the verdict to stand.

And now, Jan. 20, 1922, the rule is made absolute; so much of the verdict of the jury as imposed the costs on Polish Alliance No. 543, of Pottstown, Pa., is set aside; it is relieved from their payment, and the county is ordered to pay the costs of prosecution, not including, however, the fees and mileage of either the Commonwealth's witnesses, who have released the same, or any of the defendant's witnesses, or the costs of subpœnaing the latter.

From Montgomery Evans, Norristown, Pa.