## Commonwealth v. Casper et ux.

*Wallace S. Gourley,* for petitioner.

*George T. Cummins,* district attorney, for Commonwealth.

ACHESON, J., April 19, 1943.—On April 28, 1942, the district attorney laid before the grand jury a bill of indictment against the two defendants above named,

charging that on March 28, 1942, defendants unlawfully, wilfully, and maliciously secreted, assigned, conveyed, sold, removed, and otherwise disposed of certain personal property in their possession with intent to prevent said property from being liable for the payment of the debts of defendants and of other persons named in said indictment. This bill of indictment was based on an information made by Joe Meny, deputy constable, before D. S. Smith, Justice of the Peace of North Strabane Township. Defendants were arrested, held for court, and gave bail for their appearance.

The prosecutor whose name was endorsed on the bill of indictment (Joe Meny), and certain witnesses whose names were also endorsed on the indictment, were called before the grand jury, and on April 28, 1942, the grand jury made the following return to this bill:

> "April 28th, 1942, Not a True Bill
> Cost on Real Pros. Caesare Falconi
> Otto Behling, Foreman."

On April 28, 1942, Cesare Falconi, the prosecutor named in the return of the grand jury, was sentenced by the court to pay the costs and given 30 days within which to make payment of the same. On May 2, 1942, Cesare Falconi, the prosecutor named by the grand jury and upon whom the grand jury placed the costs of this proceeding, presented a petition to the court praying that he be relieved from the imposition of the costs placed upon him by the grand jury, and upon the presentation of the same the court directed that a rule issue (referred to in the caption hereof), returnable to the first Monday of June 1942. The district attorney and the solicitor of Washington County both accepted service of notice of the presentation of this petition. On May 2, 1942, the court extended the time in which the said Cesare Falconi should pay the costs imposed upon him by the grand jury "until a disposi-

tion is made of the issues presented in the petition to be relieved of costs which has been filed by the prosecutor, Cesare Falconi".

On June 4, 1942, the district attorney filed an answer to Falconi's petition to be relieved of costs, and prayed the court to discharge the rule theretofore issued. Upon the filing of this answer the court made an order directing that the case be placed on the next argument list.

On June 30, 1942, Cesare Falconi presented his petition to the court setting forth that the court was without sufficient facts to dispose of the issues presented in the pleadings hereinabove referred to, and setting forth the testimony that he expected to develop if an opportunity to present such testimony was accorded him. In his petition he prayed the court to appoint a commissioner to take testimony. Upon the presentation of said petition, the court appointed John B. McCreight, Esq., a member of the bar, "to take the testimony, to ascertain and prove to the court what evidence was presented to the grand jury and upon which it could base its findings that costs should be imposed on Cesare Falconi, for the purpose of enabling the court to determine if the action of the grand jury was capricious and oppressive".

The commissioner so appointed entered upon the performance of his duties and on December 16, 1942, filed his report in court together with the testimony taken before him. At that time the case was directed to be placed on the argument list. In his report, the commissioner makes a number of findings of fact all of which are clearly supported by the testimony introduced before the commissioner.

From the testimony taken before the commissioner and from the findings of fact made by the commissioner (based on said testimony), it clearly appears that: (1) Cesare Falconi acquired title to an apartment building in Washington, which at the time was sub-

ject to a lease made to defendants by the former owner of this property; (2) this lease was duly assigned to Falconi on September 9, 1941; (3) James M. Colaizzo was the duly-authorized agent of Falconi for the collection of rent and management of the petitioner's real estate above referred to, and he was authorized by Falconi to act as he, Colaizzo, saw fit in renting or collecting the rents from this property; (4) defendants became in default for the February and March rent, 1942, and one half of the January rent of the same year, the default being in the aggregate of $55; (5) Colaizzo employed Joseph Meny, a deputy constable of North Strabane Township, to distrain upon defendants' goods for the delinquent rent, which Meny did; (6) on March 30, 1942, after the warrant of distress had been executed, defendants or their agents removed their goods so distrained upon from the premises between 2 and 7 a.m. on March 30, 1942; (7) at the request of Colaizzo, Meny, deputy constable, on March 31, 1942, made an information against defendants before D. S. Smith, Justice of the Peace of North Strabane Township, charging defendants with the offense embraced in the bill of indictment subsequently submitted to the grand jury.

From the testimony, it also appears that Michael Casper, one of the defendants, stated to the constable that some of the goods were in West Virginia and that Mary Casper, the other defendant, stated to Squire Smith that part of the goods were in West Virginia and the other part at the home of her sister who lived in the Gordon Plan of Lots at Washington; that the information made by Meny was so made at the request and direction of James M. Colaizzo, who, in this respect, acted under the advice of his counsel, Wallace S. Gourley, Esq.; that Cesare Falconi, the prosecutor named by the grand jury in its return, had no knowledge that an information had been made against de-

fendants on the charges above referred to until he was subpœnaed by Meny, the constable, to appear before the grand jury as a witness in the case.

### Discussion

Two questions arise for the court's consideration as follows:

1. Does the court have power to set aside that part of the grand jury's finding which imposed the costs of prosecution upon Cesare Falconi and, if so,

2. Is this a case warranting the court in relieving the said Cesare Falconi from the payment of the costs so imposed upon him?

### I

Section 62 of the Criminal Procedure Act of March 31, 1860, P. L. 427, 19 PS §1222, provides in part, as follows:

"In all prosecutions, cases of felony excepted, if the bill of indictment shall be returned ignoramus, the grand jury returning the same shall decide and certify on such bill whether the county or the prosecutor shall pay the costs of prosecution; and in all cases of acquittals by the petit jury on indictments for the offences aforesaid, the jury trying the same shall determine, by their verdict, whether the county, or the prosecutor, or the defendant, shall pay the costs, or whether the same shall be apportioned between the prosecutor and the defendant, and in what proportions; and the jury, grand or petit, so determining, in case they direct the prosecutor to pay the costs or any portion thereof, shall name him in their return or verdict; and whenever the jury shall determine as aforesaid, that the prosecutor or defendant shall pay the costs, the court in which the said determination shall be made shall forthwith pass sentence to that effect . . ."

In Guffy v. Commonwealth, 2 Grant 66, Guffy was indicted on a charge of forgery to which he pleaded

not guilty. On the trial defendant was acquitted, and the jury directed that the prosecutor, Patterson, pay the costs. This verdict was a directed verdict as the court instructed the jury to return a verdict of not guilty. The court further instructed the jury that the question of costs was one "exclusively for the jury" and, as the offense charged was a misdemeanor, they might impose the costs either on the prosecutor, the county, or the defendant. After the verdict was rendered, the prosecutor made a motion to set aside the verdict so far as the costs were concerned. The lower court set aside that part of the verdict and an appeal from the lower court's action was taken to the Supreme Court which affirmed the judgment of the lower court.

In the Supreme Court's opinion in this case, Lewis, J., refers to the Act of December 8, 1804, 4 Sm. L. 204 (very similar in its language to section 62 of the Criminal Procedure Act of 1860), and says (p. 68) :

"It follows that the Act of 8th December, 1804, authorizing the jury in cases of acquittal to 'determine by their verdict whether the county or the prosecutor, or the defendant or defendants, should pay the costs of prosecution,' cannot take away the common law supervision of the courts, which belongs to the trial by jury . . . The jury have the power to name the prosecutor; but if they name one against whom there is not a particle of evidence; one who was not the prosecutor, and who had no notice whatever of the proceedings, the injustice would be so monstrous, that it seems impossible to doubt, in regard to the power and the duty of the court to grant redress . . . If a man upon full proof of the defendant's guilt of the most dangerous forgery of civil process, by means of which a judgment was unlawfully obtained, institutes a prosecution, and the only witness acquainted with the facts dies before the trial, and thereby the criminal escapes, it would be against law and evidence to order the prosecutor to pay the costs . . . It is not our duty to inquire

into the facts which induced the court to decide that there was 'nothing in the testimony to show that the prosecutor behaved improperly,' and for that reason to set aside the verdict 'so far as costs are concerned.' . . . Where the prosecution is not 'trifling,' but one of a grave character; where it is not 'unfounded,' but founded upon probable cause existing at the time it was commenced, but afterwards fails by the death of material witnesses, and where there is no evidence of malice in the prosecution, it is the duty of the court to set aside the verdict against the prosecutor for the costs. In short, this is the duty of the court in all cases where 'there is nothing in the testimony to show that the prosecutor behaved improperly.' The court had a discretionary power over the subject, and it is clear that matters within the discretion of the court below, are not the subjects of review here. . . .

"It is thought by some that the decision of the jury ought to be conclusive, right or wrong, whether made upon sufficient evidence and due notice, or without either, upon the ground that their decision is as likely to be correct as that to be pronounced by the court. . . . But the question is not an open one. It has been settled by the common law and by the Constitution."

Justice Knox filed a dissenting opinion in this case in which he was joined by Lowrie, C. J. In his dissenting opinion, Justice Knox referred to and quoted from the Act of December 8, 1804, 4 Sm. L. 204, and the Act of February 9, 1820, 7 Sm. L. 242, and then said (p. 71):

"In view of the provisions of the enactments quoted, it will hardly be denied that the legislature has given to the jury the exclusive power over the costs, in cases of misdemeanor, limited only as to the manner of the finding. If the verdict is guilty, of course it carries costs. If not guilty, they may impose them upon either the defendants, the prosecutors, or the county.

"That the legislature might lawfully designate the tribunal in whose hands this power should be placed, is too clear for argument."

Some comment has been made in some later cases decided by the lower courts to the effect that in view of the strong dissenting opinion in the Guffy case its authority was much weakened, and that the courts do not have the power to set aside that part of the jury's finding disposing of costs where the grand jury ignores the bill.[1]

However, regardless of the dissenting opinion of two of the five members of the Supreme Court at the time that case was decided, that case is the law and it has been followed and cited with approval by a great many subsequent cases decided by both the lower courts and by the Superior Court.

In a number of cases since Guffy v. Commonwealth, supra, the courts have relieved prosecutors from the

---

[1] See Commonwealth v. McNair; 3 York L. R. 216, in which Judge Gibson of York County, after referring to section 62 of the Act of March 31, 1860, P. L. 427, says:

"It is therefore an imperative duty imposed upon the grand jury so to decide and certify. There is certainly no power in the court to interfere with the finding of the grand jury as regards the ignoring of the bill. . . . This would be a transfer of the responsibility, given by the Act of Assembly, from the grand jury to the court."

See also Commonwealth v. Showers, 7 Pa. C. C. 179, where a petit jury acquitted the defendant of a misdemeanor and imposed the costs upon the prosecutor. The court was asked to set that part of the jury's findings aside, but refused to do so. Judge Pershing of Schuylkill County quoted from section 62 of the Criminal Procedure Act of March 31, 1860, and said:

"The law, therefore, has given to the jury the control over the costs in cases such as the one before us, where there is a verdict of acquittal, and the language of the statute plainly indicates that it was not the legislative intention that the courts should interfere with their determination . . .

"The case mainly relied upon in support of this motion is Guffy v. Com., 2 Grant, 66 . . .

"The authority of Guffy v. Com. was much weakened by the dissent of two out of the five justices who at the time composed the Supreme Court."

payment of costs placed upon them by grand or petit juries.[2]

In Commonwealth v. Charters, 20 Pa. Superior Ct. 599, the Superior Court held that the statutes authorizing the jury in case of acquittal to determine by their verdict whether the prosecutor, the county, or the defendant shall pay the costs do not take away the common-law supervisory power of the courts which belongs to trial by jury, and therefore the court has the power to set aside that part of the verdict of acquittal which imposes the costs on the prosecutor; and that the same rule applies to the finding of a grand jury imposing costs on the prosecutor.

In Commonwealth v. Shaffer, 52 Pa. Superior Ct. 230, the Superior Court held that the statutes authorizing the jury, in case of acquittal, to determine by their verdict whether the prosecutor, the county, or the defendant should pay the costs do not take away the common-law supervisory power of the court which belongs to a trial by jury; and hence, the court has power to set aside that part of a verdict of acquittal which imposes the costs on the prosecutor.

The authorities hereinabove cited or referred to clearly establish the right of the court to relieve a prosecutor from the imposition of costs placed upon him by a grand or petit jury, in a meritorious case.

If this right is exercised, does the court then have power, after relieving a prosecutor from payment of costs, to direct the payment of those costs by the county?

The Act of May 19, 1887, P. L. 138, sec. 1, 19 PS §1225, provides as follows:  -

---

[2] See Commonwealth v. Braungard, 30 Lanc. L. R. 359, Commonwealth v. Stewart, 30 Lanc. L. R. 54, Commonwealth v. Bain, 1 Pa. C. C. 25, Commonwealth v. Farrell, 2 Chest. Co. Rep. 381, Commonwealth v. Steele, 2 Chest. Co. Rep. 380, Commonwealth v. Mundis, 2 Chest. Co. Rep. 381, Commonwealth v. Yeager, 3 Dist. R. 237, Commonwealth v. Bannon et al., 1 Dist. R. 130, and Commonwealth v. Doyle, 16 Pa. Superior Ct. 171.

"That the costs of prosecution accruing in every case of misdemeanor in any of the courts of quarter sessions of the peace of this Commonwealth shall, on the termination of the prosecution by the bill of indictment being ignored by the grand jury, or by a verdict of a traverse jury and sentence of the court, thereon be immediately chargeable to and paid by the proper county: Provided, That the county shall be liable only for the costs of such witnesses, as the district attorney shall certify were subpœnaed by his order, and were in attendance and necessary to the trial of the case."

Section 2 of the Act of April 14, 1905, P. L. 152, 19 PS §1231, provides as follows:

"That whenever the verdict of a jury, imposing costs upon the prosecutor or defendant in any criminal proceeding, shall be set aside by the court, it shall be lawful for the court to make an order directing the county to pay the same, which order shall be sufficient authority for the payment of the same by the county: Provided, That the provisions of this section shall not apply to costs for the attendance or subpœnaing of defendant's witnesses."

The Act of 1887, supra, fixes the liability on the county for the immediate payment of the costs of prosecution in every case of misdemeanor where the bill of indictment has been ignored, or where there has been a verdict of a traverse jury and a sentence of the court thereon. The second section of the Act of 1905, supra, provides that when a verdict of a jury imposing costs on a prosecutor or defendant in a criminal proceeding is set aside by the court "it shall be *lawful*" for the court to make an order directing that the county pay the same.

These acts were construed by Judge Orlady in the case of Commonwealth v. Dickinson, 62 Pa. Superior Ct. 468. In that case, a prosecution was made under the game laws, and upon appeal defendant was tried on an indictment; defendant was acquitted and the costs placed upon the prosecutor, who was secretary of

the Board of Game Commissioners. Prosecutor presented a petition for an order on the county to pay the costs. The lower court made an order setting aside so much of the verdict as imposed the costs on the prosecutor, but refused the request that the court should order the county to pay the costs. On appeal to the Superior Court, the order of the court below refusing to make the county pay the costs was reversed and the County of Clearfield was directed to pay the same. In his opinion in this case, Judge Orlady says that whatever doubt might have previously existed regarding the court's right to direct the payment of costs was settled by the Act of May 19, 1887, P. L. 138. He then quotes a portion of the Act of 1887, and says (p. 472) :

"The effect to be given to the words 'on the termination of the prosecution, by the bill of indictment being ignored by the grand jury, or by a verdict of a traverse jury and sentence of the court thereon,' is carefully considered in Wright v. Donaldson, 158 Pa. 88, in which Williams, J., says in regard to it: 'The Act of 1887 was intended to remedy the hardships of that of 1860. It changed the position of the county from that of an ultimate guarantor liable only after all proper legal remedies had been used unsuccessfully against the party on whom the costs had been imposed, to that of liability in the first instance; and charged it with the duty of using all the legal means of collection from the proper party, to reimburse itself.' This was followed in Allen v. Delaware County, 161 Pa. 550, the court saying: 'The Act of 1887 in creating a liability of the county for costs in such a case did not mean that the court should go through the superfluous formality of sentencing the county to pay, for the act itself expressly does that by the direction that the county shall be "immediately chargeable" with them . . . There is no reason for construing the requirement of a sentence as applicable to cases where it could only be a most superfluous technicality, totally without influence

on the liability of the county which it was the purpose of the act to establish.'

"In the present case the defendant was relieved by the verdict of the jury, and the prosecutor by the order of the court setting aside the verdict as to costs. The matter as to each of these was terminated, and neither had any further liability in regard to it . . . And the second section of the Act of April 14, 1905, P. L. 153 . . . did not change the liability of the county as fixed by the Act of 1887. The latter act being confirmatory of the earlier one; making the order indicated by the Act of 1905, did not involve the exercise of judicial discretion, unless it was found that the prosecution was unfounded, or for want of probable cause existing at the time when it was commenced, or was maliciously conducted, as indicated in Guffy v. Commonwealth, 2 Grant 65. . . .

"No good reason being shown for refusing to make the order that the county should pay the costs of prosecution, the order of the court below is reversed, and it is now ordered that the costs authorized by the law in this case to be taxed of record, be chargeable to and paid by the County of Clearfield."

The authorities last above referred to clearly show that where the court has exercised its discretion and has relieved a prosecutor from the payment of costs improperly placed upon him by a grand or petit jury, the court should make an order directing the county to pay the costs.

The facts hereinabove referred to clearly establish that Falconi, the owner of the property in which defendants were tenants, had no knowledge of the making of the information on which they were arrested until he was notified to appear before the grand jury and testify as a witness. The testimony in the case clearly establishes that the goods which had been levied upon by Constable Meny under a landlord's warrant of distress were removed during the night from the place where they were at the time the warrant of distress was

served, and that some of those goods had been transported to West Virginia and other goods had been taken to the home of the sister of defendant Mary Casper. The testimony establishes that about 11 or 12 o'clock on the morning after the goods had been removed from the premises, Mary Casper, one of the defendants, went to the place of business of the witness Passalacqua (on the ground floor of the building where defendants lived), and left the key to their apartment with Passalacqua, telling him that they had moved out of the premises. Colaizzo, who initiated the prosecution, testified before the commissioner at some length regarding the case, and was asked whether he had given the same testimony before the grand jury that he gave before the commissioner. He replied that he had not, and when asked why, said, "I wasn't given the opportunity, I could only answer questions that I was asked". He further testified that he wasn't given the opportunity to state why he had taken the procedure that he had followed. Meny, the deputy constable who made the information, was called as a witness before the commissioner and testified at some length. He was asked whether he had testified to the same facts before the grand jury that he had related before the commissioner and replied "No, they didn't give me a chance, I wanted to explain from start to finish, but they wouldn't give me the chance". Whether intentional or not, the testimony before the commissioner seems clearly to indicate that this case was not developed before the grand jury as it should have been and that all the facts available were not presented to the grand jury. The evidence offered before the commissioner was not only sufficient to warrant the finding of a true bill by the grand jury, but in the absence of countervailing proof it is clearly sufficient to have warranted a trial jury in convicting defendants of the crime with which they were charged. It is proper, therefore, that the prosecutor, Cesare Falconi, should

be relieved of the costs of prosecution imposed upon him by the grand jury.

The court, therefore, makes the following

*Order.*

And now, April 19, 1943, the court orders and decrees as follows:

1. The rule heretofore issued in the above-entitled case to show cause why Cesare Falconi, the prosecutor named in the return of the grand jury, should not be relieved from the imposition of the costs placed upon him by said grand jury is made absolute, and so much of the finding of the grand jury as imposed the costs on the said Cesare Falconi is hereby set aside.

2. The costs of prosecution accrued in the above-entitled case are hereby made chargeable to and directed to be paid by the County of Washington.