## Mills *versus* The Commonwealth.

A court of Quarter Sessions has no authority to try an indictment for seduction at an adjourned sessions of said court, where the trial was not commenced at a regular quarterly session of said court. The 50th and 51st sections of the act of 14th April, 1834, relative to courts, do not authorize such a court to transact, at an adjourned sessions, any business requiring the intervention of a grand or petit jury. If the counsel for the prisoner had consented to such trial, such consent would not be material.

ERROR to the Court of Quarter Sessions of *Dauphin county*.

Mills was tried on an indictment for seduction at an adjourned court of Quarter Sessions for the county of Dauphin, held in October, 1849. The regular sessions for that county are held in the months of January, April, August and November of each year. A true bill was found against Mills at the August Sessions, 1849. The case was continued till the adjourned Court to be held in October—a venire was awarded to the Sheriff and Commissioners for the drawing and summoning of thirty-six jurors, &c.

Oct. 15, 1849, defendant being arraigned plead "not guilty." and also specially, as per paper filed.

The Commonwealth moved to strike off the special plea, as amounting in effect to the general issue. The court directed it to be stricken off. Defendant objected. The trial was ordered, and Oct. 19, 1849, the jury found the defendant guilty in manner and form as he stands indicted. Motion made for a new trial and in arrest of judgment; and on December 6, 1849, motion overruled and judgment for the Commonwealth, and defendant sentenced to imprisonment in the Dauphin county prison for and during the term of three years, &c.

With other assignments it was assigned for error that there was no lawful authority for holding the court in October, at which defendant was tried, or for trying him at the said court.

The case was argued by *Rawn*, with whom was *Emerson*, for Mills.—Reference to 29th section of the act of 14th April, 1834, relative to courts, to be found in *Purdon* 232, 233, and to 49th, 50th and 51st sections of same act.

Argued by *McAllister*, with whom was *Fox* and *Kunkel*, on the part of the commonwealth.—It was alleged that the case was continued by the court out of a spirit of accommodation to the prisoner.

The allowance of a writ of error in a criminal case is entirely discretionary with the court, and as the court might have refused

the writ on a technical point not affecting the merits, they may decline reversing for such a point.

The opinion of the court was delivered by

COULTER, J.—Want of jurisdiction in the tribunal below is assigned for error. The acts of 16th April, 1845, and 14th October, 1834, fix the times for holding the Court of Quarter Sessions of Dauphin county in January, April, August and November.— The prisoner was tried at an adjourned Court of Quarter Sessions for the same county held in October. The question to be resolved is whether the Court of Quarter Sessions, at an adjourned session, have any lawful authority to try issues by jury, or summon and empannel a jury for that purpose.

In England the Court of General Quarter Sessions of the Peace was established by the 18 and 34 Edward III., and by the 2 Henry V.; it must be held four times a year in every county of the kingdom. On that statute two descriptions of courts are founded. The first, properly the Court of Quarter Sessions, which sets four times every year, and the General Sessions, which meets in the intermediate periods. And this court is established under the words of the statute of Henry V., which directs that the Quarter Sessions shall be held once a quarter, *and oftener if occasion shall require.* Under these latter words the General Sessions of the Peace are held intermediately between the Quarter Sessions. Both courts are composed of two or more justices, one of whom shall be of the quorum; and the Quarter Sessions have somewhat more extensive powers than the other, but the scope of the powers of both are in general the same. In this Province before the constitution of 1790 was adopted, the General Sessions and the Quarter Sessions seem to have run into each other, and at the adoption of the constitution the Quarter Sessions, *in propriâ vigore,* was affiliated in our system under the designation of a Court of Quarter Sessions of the Peace for each county. All our statutes on the subject provided that this court should sit quarterly in each county, and the one now in force, to wit: the act of 14th April, 1834, provides that the Court of Quarter Sessions shall be holden in every county four times a year, and the same statute enacts that unless otherwise specially provided it shall meet on the same day with the commencement of the regular terms of the Courts of Common Pleas in each county; the judges of which courts are by the terms of the constitution also judges of the Sessions. And where the terms of the Court of Common Pleas are of two weeks, the Sessions may be continued for that length of time if the business pending shall require it. Such a thing as an adjourned Court of Quarter Sessions was not known in this State until the passage of the act of 1834, the 49th section of which enacts that the Sessions may continue beyond the

term for such time as may be necessary to complete the trial and sentence of any person whose 'trial shall have been commenced during the period limited by law for holding the said court. This is a pregnant legislative interpretation and construction of the power of the Court. For if the court possessed inherently the power of adjournment, why give them the power to continue longer than the period appointed by law in order to meet and fulfil a particular emergency? If the court have by its inherent powers the faculty of adjournment beyond the period fixed by law, in a case so pointedly requiring such a measure, why enact a statute to enable it to do so? But in the country of the court's origin, England, it did not possess that power, and hence the establishment of General Sessions under the concluding words of the statute 2 Henry V., to meet any emergency that might require its power, and which court regularly met at intermediate periods. But our statute of 1834 contains still stronger evidence against the power of adjournment beyond the period fixed by law. The 50th section authorizes any two of the judges to hold *special* Sessions as occasion shall require, thus clearly negativing the inherent power of adjournment. But the 51st section of the same act provides, that at such *special sessions no business within the jurisdiction of the said court requiring the intervention of a grand jury or petit jury shall be transacted.* The reason for this provision of the statute readily occurs. In modern times a great deal of business has been thrown on the Court of Quarter Sessions in relation to the poor, the roads, to tavern licenses, to taxes and various other matters which do not require the intervention of a jury. It was therefore thought expedient to disencumber the Sessions during the period fixed by law for jury trials and issues of this kind of business, in order that they might have more leisure to conduct those trials which affected the personal liberty of the citizen. In regard to these the legislature, like the English barons of old, were unwilling to change the ancient laws, or to substitute a trial before a few people and in a corner, at the will of the court, for a public trial in the face of the county at its usual time of assembling. In addition to this, there is no statutory power to select or summon a jury for such special sessions, and there is an especial statutory interdict to the uses of a jury at such time. The jury then was summoned and empannelled without authority of law, and the jury being an essential part of the court in a criminal case, must be lawfully constituted as well as the court proper. But it is alleged that the Court of Quarter Sessions was in session; and so it was for certain purposes, but with an interdict as high and a command as obligatory as the sovereignty of this State can impose against transacting business such as that under which the prisoner suffers. Which shall be obeyed, the sovereign power of the State, or the will of the Court of Quarter Sessions? We are

[Mills *v.* The Commonwealth.]

bound to regard the former. It is contended also that it is not a case of want of jurisdiction, because the Court of Quarter Sessions has jurisdiction of the offence. True, but it must be a Court of Quarter Sessions, acting and speaking according to law.

Jurisdiction in courts is the power and authority to declare the law. The very word in its origin imports as much. It is derived from *juris* and *dico*. I speak by the law. And that sentence ought to be inscribed in living light on every tribunal of criminal power. It is the right of administering justice through the laws by the means which the law has provided for that purpose. But here the mode and the manner of administering the justice of the country was not provided or prescribed by the law, and is directly prohibited by it. There was therefore no jurisdiction.

We often reverse not only civil but criminal proceedings for small technical errors on the record. And the reason is, that it is fit and proper that the uniformity and proportions of the law should be preserved. But shall we be attentive to the *mint annis and cummin*, and neglect the weightier matters of the law? Shall we reverse for technical errors in the record, and hold proceedings valid, where a man was tried, convicted, and is now in punishment, by a proceeding directly prohibited by law?

But it is contended that the counsel of the prisoner consented to his being tried at this adjourned Court of Quarter Sessions, and if they did, it ought not to weigh a feather in the scale of justice. They may have been ignorant of the law and of his rights, and therefore made no objection. But it is not the consent of counsel which can constitute a tribunal by which a citizen may be tried and punished. It is the law of the land, and that alone which can constitute and establish such a tribunal.

I need not repeat the authorities which establish that consent cannot give jurisdiction. In criminal proceedings especially, that axiom has grown with the growth and strengthened with the strength of the law. Trials by lynch law, might otherwise be valid. For, at times, I dare to say a man might consent to their jurisdiction in hope or in fear, or perhaps in ignorance. But *autrefois acquit* or *autrefois convict* could not be pleaded in that case, nor in this. Because it is a lawful trial only that can be effectually so pleaded. Some affidavits and some certificates of such consent were produced at bar, but the counsel for the defendant positively deny it on their affidavit. But we can regard neither the one nor the other. They are no part of the record, nor can they be made such. But for myself, I think it a matter of no account, and if the prisoner had appeared in court, and under his sign manual on the record agreed to be then tried, it would not have had the slightest influence with me. I look to the law of the land. Something was said of the enormity of the offence. The prisoner undoubtedly if guilty, (in relation to which it is not for

[Mills *v.* The Commonwealth.]

me to express any opinion, as he will be tried again,) not only violated the highest dictates of morality and good manners, but broke the law, and exhibited a most corrupt and indecent want of taste. But we look only to the record of the trial.   It is our duty to see that it is right and lawful.

Heeding neither the impulses of passion, nor tolerating the intrusion of prejudice; but in calm severity of judgment we apply the rules of the criminal law to it.   And by that test we find it wanting.   The trial was *coram non judice,* and therefore null.

Various other errors are assigned to the record, but as we believe there was no jurisdiction in the tribunal, we decline to notice them.

Judgment and sentence reversed.

It is further ordered, that the prisoner remain in confinement until further trial, unless he enter into recognizance with sufficient sureties before competent authority, to appear in the Court of Quarter Sessions of Dauphin county, and answer to such bill of indictment as shall be found against him in this behalf, provided there is no other cause for his detention.