*Criminal law—Trial by judge without jury—Waiver of right to jury trial—Power of judiciary—Constitutional law.*

1. Under the Constitution and laws of Pennsylvania the court of quarter sessions has no jurisdiction in a criminal case, where the defendant has pleaded not guilty, to try the case without a jury, and no waiver on part of defendant can confer such jurisdiction.

2. The rule that in a criminal case, where the defendant consents, the case may be tried by less than twelve jurors, is a variation of the system of trial by jury, whereas trial by a judge without a jury is abolition of the system of jury trials in criminal cases.

3. A uniform practice, continuously pursued from the beginning in Pennsylvania, and recognized by the organic law, of trying indictable offenses, on a plea of not guilty before a judge and jury, establishes a practice as the public policy of the state to such an extent that the situation should be viewed as though the law-making power had limited the legal capacity of the courts accordingly.

4. Such public policy has been recognized by the Constitutions of the State, past and present, the statutes of Pennsylvania, and also by the decisions and opinions of the Supreme Court.

5. To permit a trial by a judge without a jury, in a criminal case, would be in conflict with several statutes, which expressly direct such trials to proceed before a jury. It would also conflict with statutes which confer upon juries the right to deal with costs in criminal cases.

6. The statutes relating to costs, and other statutes which use the jury as an agency for certain purposes, involve a legislative intertwining of the jury into the administrative fabric of the criminal law, which cannot be abolished by the judiciary.

342    COMMONWEALTH, Appellant, *v.* HALL.

7. Generally speaking, the legislature is the body to declare the public policy of the state and ordain changes therein, where matters of expediency alone are up for consideration.

8. Where a judge exercises a power not conferred upon him by law, his act is more than a mere irregularity, which can be waived by a defendant; it is a nullity.

9. Not decided whether a statute may be enacted without a constitutional amendment, permitting a trial by a judge in a criminal case where trial by jury is waived by the defendant.

Argued November 28, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 342, Jan. T., 1927, by Commonwealth, from judgment of Superior Court, Oct. T., 1926, No. 140, reversing judgment of Q. S. Phila. Co., Aug. T., 1925, No. 48, in case of Commonwealth v. James Hall. Affirmed.

Appeal from judgment of Superior Court.

The opinion of the Supreme Court states the facts.

The Superior Court reversed the judgment of the quarter sessions. The Commonwealth appealed.

*Error assigned* was judgment of Superior Court, quoting it.

*Joseph K. Willing,* Assistant District Attorney, with him *Charles Edwin Fox,* District Attorney, for appellant.—The jury is an essential part of the court of quarter sessions when the defendant asks to be tried by a judge and jury, but the jury is no part of the court of quarter sessions when the defendant invokes his natural privilege of exercising his constitutional rights by waiving a jury.

Originally the court of quarter sessions had no jury. Innumerable statutes provided that the justice of the peace should have jurisdiction to hear and punish for numerous offenses.

It is interesting to know that in the old law the accused was not entitled as a matter of right to a trial by jury. If he wanted it he had to purchase it by making an offer to the king. A right to a trial by jury was a privilege which the king sold.

Therefore, there is nothing in the Constitution which says that an individual must be tried by a jury, and that a jury is a sine qua non of a court of quarter sessions: Com. v. Fisher, 213 Pa. 48; State v. Stephens, 84 N. J. L. 261; Com. v. Sweet, 4 Pa. Dist. R. 136.

The Constitution of Pennsylvania guarantees only that the "right" to a jury trial shall remain inviolate. A "right" is a privilege conferred upon an individual to be used as the individual deems most beneficial to himself. Before the word "right," as used in the Pennsylvania Constitution, we might easily understand the word "enjoy" as used in the federal Constitution. A "right" conferred upon an individual can be waived if the individual so desires.

A defendant who is given an opportunity to be tried with or without a jury does not create a new court if he elects to be tried by a judge without a jury.

*J. B. Colahan,* with him *John C. Hinckley,* for appellee.—There is no provision in the Constitution and laws of the Commonwealth of Pennsylvania authorizing a judge, without the aid or assistance of a jury, to pass upon the facts and adjudge the guilt or innocence of one indicted in the court of quarter sessions: Mansfield's Case, 22 Pa. Superior Ct. 224; Mills v. Com., 13 Pa. 627; Com. v. Collom, 1 Pa. Superior Ct. 542.

There is no authority for the statement that the quarter sessions court for the trial of certain cases was not composed of a judge and jury: Smith v. Pub. Co., 178 Pa. 481; Com. v. Collins, 268 Pa. 295; Lavery v. Com., 101 Pa. 560; Com. v. Francies, 250 Pa. 496; Com. v. Andrews, 24 Pa. Superior Ct. 571.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, January 3, 1928:

James Hall was indicted in the Court of Quarter Sessions of Philadelphia County for cutting, stabbing and wounding one Margaret Fitzpatrick; he pleaded not guilty. When called for trial, the accused expressly waived a jury, and moved the court "to determine the issues of fact and law involved"; also to "enter such verdict and impose such sentence as the facts and law require." The court proceeded accordingly, and, on the testimony received, "adjudged defendant guilty as indicted." From a sentence subsequently imposed, the prisoner appealed to the Superior Court, filing several assignments of error, which raise the points that, under the Constitution and laws of Pennsylvania, the court of quarter sessions lacked authority to try this case without a jury, and that his waiver could not confer such authority. These same contentions had been raised in the court of first instance, on motions for a new trial and in arrest of judgment; that tribunal decided against defendant, and the Superior Court in his favor; the Commonwealth has appealed to us from the judgment of the latter.

The Superior Court, in its opinion disposing of the present case, particularly stated that it would not consider whether the legislature might constitutionally enact a law enabling one indicted in the court of quarter sessions to waive his guaranteed right to trial by jury, since that question was not up for decision. A statute of this kind, which vested in the judges of the quarter sessions the right to exercise the functions of a jury, might perhaps be sustained, but as there is no act in Pennsylvania empowering any tribunal to try indictable offenses, on a plea of not guilty, without a jury, we, like the Superior Court, shall not attempt to determine the abstract question of the possible validity of such legislation; that point is not now before us,

Judge EDWIN O. LEWIS, who presided at the trial under review, mentions, in an elaborate opinion, practically all the American cases which touch on the subject of trial by jury in criminal cases, and on the right to waive it (see Commonwealth v. Hall, 7 Pa. D. & C. R. 689); but an examination of these cases shows no instance where an appellate court has affirmed the right of a judge to try without a jury, on a plea of not guilty, persons charged with indictable crimes, and thus to reach a verdict, except where legislative sanction was cited for the ruling. A few of the precedents relied on appear, at first glance, to approve the procedure followed in the present case, but, when investigated, each of them shows that the court of review based its actual ruling on some statutory authority.

In certain of the cases cited by the court below, the defendant had expressly allowed the trial to proceed with a jury of less than twelve, and the reviewing tribunal discussed the matter as though there had been a waiver of the entire jury, suggesting that, logically, such wholesale relinquishment on the part of a defendant could as well be sustained in law as the waiver of the services of a single juror. It should, however, be evident to everyone that trial by a judge without any jurors is quite a different thing from trial by judge and jurors, though the latter be less than the standard number. The system of trial by jury brings, and is intended to bring, the private citizen into the administration of justice; if there be only one juror, he represents the lay point of view, of which defendant gains the benefit, at least to that extent. At an early date in our history, trial by a reduced jury was a recognized institution, as a preference to having no jurors at all. See Com. v. Maxwell, 271 Pa. 378, 381, where we said: "Under the laws of the Duke of Yorke......(Duke of Yorke's Book of Laws, 1682-1700, page 33), which were in force in Pennsylvania, it was provided for the summoning of jurors,......[and that] 'No jury shall exceed the num-

ber seven, nor be under six, unless, in special causes upon life and death, the justice shall think it fit to appoint twelve.'" Though, by amendments, the number of jurors was raised to twelve in the court of general assizes, yet in the "courts of sessions" it was provided that the number should be "as already in the law is set forth." See also Act of May 1, 1861, P. L. 682, sections 3 and 4, providing that certain offenses may be tried by a justice of the peace and six jurors, discussed in Lavery v. Com., 101 Pa. 560. The force of this distinction between some jurors and no jurors cannot be diminished by any technical argument that, if the jury in a criminal prosecution can be reduced to eleven with the consent of defendant, then all twelve jurors may be excused in like manner, and the trial proceed before the judge alone. Reported opinions may be found in which the unwarranted conclusion just stated, though not applied, is assumed to be correct, but other cases take the opposite view; and that assumption will not stand critical examination. It is not good legal reasoning to say since it takes twelve members to make a standard jury, if one can be excused and a jury capable of functioning still remains, it follows that, when all twelve are excused, the functions of the jury devolve upon the trial judge; yet, on analysis, it will be found that this is the reasoning pursued in the cases to which we refer. A judicial ruling which permits the reduction of a jury below twelve, by consent of the defendant, is a variation of the system of trial by jury; whereas trial by a judge without a jury is abolition of the system as applied to the case in hand. There is a distinct difference between the two.

Our present Constitution, by article I, section 6, provides that "Trial by jury shall be as heretofore and the right thereof remain inviolate"; and, by section 9, that "The accused hath a right......in prosecutions by indictment......, [to] a speedy public trial by an impartial jury." It will be noticed that, differing from

the Constitution of the United States, which expressly provides (article III, sec. 2) that the trial of criminal cases "shall be by jury," our organic law simply guarantees the right to trial by jury. This distinction has been noted in many judicial decisions, which hold that, where only a right is guaranteed, it may be waived. (For an enumeration of some of the constitutional rights and privileges which may be waived by the defendant in a criminal proceeding, see Lavery v. Com., 101 Pa. 560, 564, 565.) While the principle stated in these decisions may be conceded, it is not controlling in this case. The point here is: Where we find a uniform practice,—continuously pursued from the beginning of the Commonwealth, and recognized in our organic law, —of trying indictable offenses, on a plea of not guilty, before a judge and jury, does this not establish the practice as the public policy of the State to such an extent that the situation should be viewed as though the lawmaking power had limited the legal capacity of the courts accordingly? and, particularly, is this not so where (as we shall show to be the fact in the present case) the legislature has both recognized the practice just stated and, by several statutes, expressly given to juries primary authority over the costs in a large class of criminal cases, and by other statutes, has expressly constituted juries as the agency through which certain important changes from the common law are to be carried into effect?

So far as research discloses, every reference approaching the point now before us to be found in our state Constitutions (past and present) and in the statutes of Pennsylvania, also at least one ruling by this court, and several statements directly on the matter which appear in our reported opinions, all indicate a public policy such as we have mentioned. In some instances, this policy is merely given passing recognition; in others, it is treated as amounting to positive law; and in still others, the statutory recognition consists of

provisions stipulating the use of the jury to impose costs, and to care for certain contingencies which arise in the course of the trial of criminal cases. We shall elaborate these points, at the cost perhaps of a rather long opinion, in the hope of indicating matters necessary for consideration in any future effort to accomplish a quicker method of trying criminal cases, or certain classes of such cases; for most of the matters we have in mind were apparently lost sight of by the trial judge in this case, or he overlooked the manner in which they enter into and affect our law.

To begin with, the portions of the two constitutional provisions above quoted, taken together, refer to "trial by jury......as heretofore......in all criminal prosecutions." Then, section 7, article I, provides that, "In all indictments for libels, the jury shall have the right to determine the law and the facts, under the direction of the court, as in other cases." This last provision, which appears also in the Constitutions of 1790 and 1838, is a high and plain recognition of an existing public policy to try indictable offenses by court and jury; its significance lies in the phrase, "as in other cases," which words, with their context, must mean other cases of criminal indictment. Article V, section 27, of the Constitution, provides that, "The parties, by agreement filed, may in any civil case dispense with trial by jury, and submit the decision of such case to the court...... and [it] shall hear and determine the same." This provision, which first appeared in the Constitution of 1874, significantly omits criminal cases; its evident purpose was to state how and under what circumstances the parties themselves, without permission or consent of the court, or further warrant of any kind, legislative or otherwise, might conclusively waive trial by jury; and, under the law as it then stood (and still stands), it certainly confines such conclusive waivers to civil cases. In the trial of a reported case of that character, which occurred shortly prior to the adoption of the

above quoted constitutional provision, the parties agreed that the presiding judge alone should find the facts and law; and that a verdict should be entered thereon as if it were the verdict of a jury; this was done. On appeal, we held that the trial was not "in due course of law," and quashed a writ of error on the ground that, for the reason just stated, there was no judgment to appeal from: see Gwynn v. O'Hern, 72 Pa. 29. Since, on the criminal side, the written law, both constitutional and statutory, still stands as it did at the time of the decision in Gwynn v. O'Hern, the principle on which that case was ruled must control here; and this of course would mean, in the present case, that the verdict and sentence, found and entered by the trial judge alone, would be nullities, because not found and entered "in due course of law."

When the statutes of Pennsylvania are examined, for light upon the matter of our present consideration, section 74 of the Act of March 31, 1860, P. L. 382, 402, provides that, when one accused of murder "shall be convicted by confession, the court shall proceed, by examination of witnesses, to determine the degree of the crime, and to give sentence accordingly." If the courts already possessed the right in criminal cases to find a verdict without the aid of a jury, of course they would possess the lesser right to find the degree of an offense, without the need of an act of assembly to confer that power; so this statute may be looked upon as a legislative recognition of the lack of such power. The Act of 1874, P. L. 109, provides for the trial of civil cases by a judge without a jury, and expressly states that an agreement of the parties to proceed under the act "shall be a waiver of the right of trial by jury"; the exclusion of criminal cases from this statute is a legislative recognition of the long-continued public policy of the State to try criminal cases, on a plea of not guilty, by judge and jury.

A strong reason against sustaining any attempt on the part of the judiciary to take over the rights, privileges and duties of the jury, in the trial of criminal cases on a plea of not guilty, without previous enabling legislation granting and regulating the powers thus to be exercised, is that a move of this kind would be in conflict with much legislation already on our statute books, which not only recognizes the State's established policy to the contrary, but in some instances expressly directs such trials to proceed before a jury. For example, section 25 of the Act of March 31, 1860, P. L. 427, 436, provides that "In all cases of felony, the prisoner shall be arraigned, and where any person on being so arraigned shall plead not guilty, every such person shall be deemed and taken to put himself upon the inquest or country for trial." This section, which contains some additional provisions to those just quoted, was enacted to dispense with useless common-law forms that prevailed as late as 1860 in some of our criminal courts (Report on the Penal Code, 43); it refers only to cases of felony, and, by subsequent amendments (see sec. 4, Act of January 7, 1867, P. L. 1369, 1371, and sec. 1, Act of May 15, 1895, P. L. 71), the necessity for arraignment even in such cases, was abolished except on indictments charging murder. The manner in which this amendatory legislation was written left intact the provision that every person charged with a felony, who pleaded not guilty, should "be deemed to put himself upon the inquest or country for trial," and this particular part of the Act of 1860 merely placed in statutory form a long-established common-law or public-policy rule of Pennsylvania, applicable alike to persons charged with either a felony or a misdemeanor; but, since the main subject-matter of section 25 was arraignments, and, before 1860, it had ceased to be necessary to arraign prisoners charged with misdemeanors (Jacobs v. Com., 5 S. & R. 315, 316), that class of offenses was omitted. The fact remains, however, that, by the above statutory require-

ment, one charged with a felony, who pleads not guilty, thereby goes to a jury for trial, for the legislature has so ordained. If we look upon persons charged with misdemeanors as in a separate class from those charged with felony, then there is a considerable body of legislation which in terms requires the former class of cases to go before a jury, to pass on questions of costs and for other material reasons, as we shall now show.

In 1 Stewart's Purdon's Digest, beginning at page 1053, will be found a series of acts dealing with costs in criminal cases; for example, the Act of March 31, 1860, sec. 62, P. L. 427, 445, which provides that, on trials of misdemeanors, "the jury......shall determine by their verdict" who is to pay the costs. Costs, including witness fees, are an essential feature in the administration of the criminal law, and by this provision the jury is made the arbiter of them. For a judicial statement concerning the condition of the law prior to 1860, see Com. v. Kocher, 23 Pa. Superior Ct. 65. The Act of May 19, 1887, P. L. 138, provides that, in prosecutions for misdemeanors, before the county can be legally charged with costs, including witness fees, there must be either an ignoring of the bill by the grand jury, or a "verdict of a traverse jury" and "sentence of the court": see Wright v. Donaldson, 158 Pa. 88, 89; Com. v. Dickinson, 62 Pa. Superior Ct. 468, 472. Here is a legislative interweaving of the jury into the administrative fabric of the criminal law which cannot be abolished by the judiciary. Though, under the construction placed upon the Act of 1887, there has to be a final judicial determination following a verdict, to fix the county's ultimate liability (Wright v. Donaldson, supra; Allen v. Delaware County, 161 Pa. 550, 552, 553), yet, if the case is one for submission to the jury, that body must be permitted to pass on the question of costs (Long v. Lancaster County, 16 Pa. Superior Ct. 413, 417) and determine by verdict who is primarily liable for them, before the presiding judge has any right or control over

the matter. In all such cases the control of the court is only by way of "common-law supervisory power," to determine on review whether the jury, in placing or refusing to place costs, has abused its authority: Guffy v. Commonwealth, 2 Grant 66; Com. v. Doyle, 16 Pa. Superior Ct. 171, 174; Com. v. Shaffer, 52 Pa. Superior Ct. 230, 232.

Other statutes, ordaining substantive and administrative changes from old common-law rules, use the jury as an agency to carry such departures into effect. At common law, on the trial of an indictment for a felony, one could not be convicted of an attempt to commit the offense charged; to cure this, the Act of March 31, 1860, P. L. 427, 442, by section 50, provides that if, on the trial of a person charged with a crime, "the jury" shall find that the defendant did not complete the offense, but was guilty of "an attempt to commit the same," defendant shall not be acquitted, "but the jury shall be at liberty to return as their verdict" that the accused was guilty of an attempt to commit, and thereupon he shall be liable to be punished as though he had actually committed the offense in question. This statute, like others above mentioned, cannot be administered except through the agency of a jury. Section 51 of the Act of 1860, P. L. 427, 442, in order to overcome the rule of the common law that a misdemeanor charged is merged in a felony proved, provides that, "if, upon the trial of any person for any misdemeanor," it shall appear that he was guilty of a felony, he may nevertheless be convicted of the misdemeanor, or the court may "discharge the jury from giving any verdict" and direct that the defendant be indicted for the felony. These provisions are supplemented by section 99 of the Act of March 31, 1860, P. L. 382, 407, which provides that, when, upon the trial of an indictment for felony, "the jury shall be satisfied" of the commission of the misdemeanor of "cutting, stabbing and wounding," but not of the felony, "the jury may" acquit of the latter and convict of the former

offense.   So, other instances might be cited where, in abolishing restrictive common-law rules, our criminal code, in express terms, uses the agency of the jury.   In these instances the legislature, following established public policy, has conferred the necessary warrant to act on juries, not on trial judges; this warrant of authority, so far as it has been written into our statutory law, cannot be altered or affected by action of the judiciary, and any effort to change it, unless carefully studied and accompanied by enabling and regulatory legislation, would inevitably lead to hopeless confusion both in our criminal law and its administration.

The public policy of which we speak has not only been thus, directly and indirectly, written into the body of our law, but, as previously stated, it has also been recognized in the opinions of this court.   For example: In Mills v. Commonwealth, 13 Pa. 626, 629, we mentioned the jury as "an essential part of the court in a criminal case"; and in Commonwealth v. Maxwell, 271 Pa. 378, 388, we said that, in such cases the law contemplated trial "by jury......not by a judge alone." Com. v. Beard, 48 Pa. Superior Ct. 319, and Com. v. Egan, 281 Pa. 251, though indicating judicial leniency so far as the requirement of twelve jurors is concerned, do not question the necessity of trying indictable offenses before a jury or suggest any variation of our established policy in that regard.

Generally speaking, the legislature is the body to declare the public policy of a state and to ordain changes therein (Swarthmore Boro. v. Public Service Commission, 277 Pa. 472, 478; Enders v. Enders, 164 Pa. 266, 271; Bigelow v. Old Dominion C. M. & S. Co., 74 N. J. Eq. 457, 71 Atl. 153, 174; Julien v. Model B., L. & I. Co., 116 Wis. 79, 92 N. W. 561, 565, 61 L. R. A. 668, 672) ; this is peculiarly so where a matter of expediency is up for consideration.   It may be that, in all criminal cases other than those involving the very highest grades of crime, it would be a wise and expedient step to permit

trial by a judge alone, whenever a defendant is willing to waive his right to a jury; but such a radical departure from customary practice involves a change in public policy which is beyond the control of the judicial department to establish. In many cases, on questions of good morals, as opposed to mere expediency, the courts may declare and apply the public policy of the State (Kuhn v. Buhl, 251 Pa. 348, 374; McNamara v. Gargett, 68 Mich. 454, 36 N. W. 218, 221, 13 Am. St. Rep. 355); again, where an alteration in public policy on any point of general interest has actually taken place, and is indicated by long-continued change of conduct on the part of the people affected, when such a change has become practically universal, the courts may recognize this fact and declare the governing public policy accordingly: see Mitchell v. Standard Repair Co., 275 Pa. 328, 331-2. But neither of these rules controls the present case; here no question of morality is involved,—it is purely one of expediency,—and no gradual or universal change of customary practice has occurred. In fact, so far as we are informed, this is the first instance where any Pennsylvania judge, on a plea of not guilty being entered, has undertaken to try an indictable offense without the aid of a jury; it is certainly far from a common practice. We agree with the Superior Court that, if this revolution in judicial procedure is at all permissible, the legislature must ordain it; in the present situation, for the courts to first make the change would amount to judicial legislation, a practice which we in Pennsylvania strive to avoid. The courts should be swift in asserting the rights which are theirs, but slow in the exercise of questionable powers, even to accomplish a worthy purpose. When a judge exercises a power not conferred upon him by law, his act is more than a mere irregularity, which can be waived by defendant; it is a nullity.

True, the disposition of a criminal case by a jury composed of less than the standard number of members, has been accounted as only an irregularity (Com. **v.**

Egan, 281 Pa. 251, 257), but, as pointed out earlier in this opinion, that situation differs materially from trial by judge alone. The law of Pennsylvania, as it now stands, contemplates the trial, on a plea of not guilty, of indictable offenses by a court consisting of both judge and jury; and, as ruled by the Superior Court, the judge cannot take the place of the jury even by consent of defendant. In Mills v. Commonwealth, 13 Pa. 627, 629, 630, a court of quarter sessions, consisting of judge and jury, tried an indictable offense at an adjourned session; but inasmuch as an act of assembly deprived the court of authority to sit with a jury at such a session, it was ruled by us that the tribunal was not constituted as required by law, and therefore lacked legal capacity,—or, in that sense, jurisdiction,—to adjudge the particular case before it; further, that under these circumstances such jurisdiction could not be given by consent of the defendant. The same principle applies in the present instance. Here, the court of quarter sessions acted without a jury at a time and on an occasion when the law, as evidenced by the established custom and public policy of the State, required it to act with a jury; as thus constituted, it lacked jurisdiction, in the same sense as did the court in the Mills Case, and this deficiency in power could not be cured by any waiver on the part of defendant. If the point before us concerned only practice, or administrative law, despite long-continued recognition of and acquiescence in the legislature's privilege to interfere in that field, it might well be argued that this is an occasion when we ought to assert our paramount right and hold that, as to the particular judicial procedure at issue, the time for a change of practice had arrived; such is not the situation, however, for this case embraces more than a mere point of practice,—it involves a matter of public policy, which, as we have shown, so affects the body of the law, both substantive and adjective, on the criminal side, as to imperatively call for legislation when

material departure like that attempted at the present trial is to take place. Whether a statute providing for a departure of this kind can be sustained without a constitutional amendment authorizing it, is a point not now before us, and which cannot arise till the legislature undertakes to act in the premises, which, to date, it has not done.

In reaching our decision we have not found it necessary to discuss the history and meaning of the ancient constitutional expressions referred to in the briefs of counsel, the many decisions cited by them from other jurisdictions, or those mentioned in the opinions of the two tribunals which have already dealt with this case; it is enough to say that the consensus of opinion shown by these outside cases favors the view here taken, and, as previously stated, whenever trial by judge alone has been allowed, the court, each time, rested its action on some statutory warrant. In Maryland, most often instanced for such procedure, there is both the fact of tradition and of statutory authority back of the practice. The situation at bar is controlled by Pennsylvania facts and law; to go beyond them would serve no immediate useful purpose. We may say, however, for the benefit of those who desire to extend the investigation, that some interesting discussion and a liberal citation of authorities on the general subject before us can be found in State v. Baer, 103 Ohio St. 585, 134 N. E. 786; see also Com. v. Rowe, 257 Mass. 172, 153 N. E. 537, 48 A. L. R. 762.

The judgment of the Superior Court, reversing the sentence entered by the trial court and remitting the record for further proceedings, is affirmed.

Mr. Justice FRAZER dissented.