Commonwealth, Appellant, *v.* Lash.

Argued October 6, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*Raymond V. John,* Assistant District Attorney, with him *John H. Maurer,* District Attorney, for appellant.

*Samuel E. Kratzok,* for appellee.

OPINION BY KENWORTHEY, J., February 26, 1943:

After defendant was tried and convicted in the quarter sessions that court ordered "the trial and verdict are set aside, and the District Attorney is given leave to take the necessary and proper proceedings against the defendant in the proper court, in accordance with law and this opinion". The basis of its order was that it had no original jurisdiction; that original jurisdiction over cases of this kind is exclusively in the municipal court under the Juvenile Court Law, Act of June 2, 1933, P. L. 1433, 11 PS §243 et seq.; and that the only method by which it can acquire jurisdiction is by a return of the case to it by the municipal court in accordance with section 5.

We shall first consider the correctness of this ruling.

Defendant was indicted under section 20 (11 PS §262) which provides that "Any person who contributes to the delinquency of any child ...... shall be guilty of a misdemeanor, and, upon conviction, shall be sentenced to pay a fine of not more than five hundred dollars, or to undergo imprisonment for a term not exceeding three years, or both, at the discretion of the court". This section is a re-enactment, with an increase in the penalty, of the Act of May 6, 1909, P. L. 434, 18 PS §1051, which was a supplement to the Act of April 23, 1903, P. L. 274. The act of 1903 defined

the powers of the courts of quarter sessions over delinquent children under the age of sixteen years; it recognized, for the first time in this Commonwealth, the principle that delinquent children are not criminals, that they should not be dealt with as such, and that a judge, acting without the intervention of jury, should have wide latitude in dealing with the problem of their punishment and guidance. It was on the ground the courts were not, in such cases, dealing with criminal offenses that elimination of the jury was upheld. *Com. v. Fisher,* 213 Pa. 48, 53, 62 A. 198.

There was nothing in the Act of 1903, nor in the supplement of 1909, which purported to give the juvenile court any jurisdiction over adults; this was a new concept first introduced by the Juvenile Court Law. This new step was motivated by the desire, (1) to eliminate trial by jury wherever possible, perhaps on the theory that judges are more competent than juries to pass on the credibility of immature witnesses, and (2) wherever practicable, to afford child-witnesses in cases involving adults, as well as children proceeded against, the benevolent environment of the juvenile court, to protect them from the harmful effect of appearing, in any capacity, in the criminal court.[1]

As we approach the question whether the legislature has transferred to the juvenile court any, and if so how much, jurisdiction over adults charged with contributing to the delinquency of a minor we bear in mind certain postulates. By the Juvenile Court Law, "Proceedings [against adults] may be instituted by an interested

---

[1] This is borne out by the preamble and by section 3 which requires all sessions of the juvenile court to be held separate and apart and section 7 which provides for the segregation of children pending hearing and that no child shall "be placed in any court room during the trial of adults unless his or her presence be required in the persecution (prosecution) of adults upon order of the judge presiding at the trial of such adult or adults".

party,[2] or upon the court's own motion ......" Section 21. Yet, because of the severity of the penalty provided in section 20, the offense is triable only by indictment. Pa. Const. Art. I sec. 10; *Dist. of Col. v. Clawans,* 300 U. S. 617, 81 L. Ed. 843. The effect of section 5 is that, unless "he shall so demand" an adult shall be tried in the juvenile court without a jury. Yet there is nothing in the act which purports to authorize the waiver of a jury in the trial of the misdemeanor provided by section 20[3]; and when the Juvenile Court Law was adopted it was the law (*Com. v. Hall,* 291 Pa. 341, 140 A. 626, decided January 3, 1928) that indictable offenses could not be tried without a jury even when jury trial was expressly waived; it was not until the Act of June 11, 1935, P. L. 319, 19 PS §786, that waiver was permitted "with the consent of [defendant's] attorney of record, the judge and the district attorney".[4]

When viewed in vacuo section 2 of the Juvenile Court Law is open to but one construction, the one placed upon it by the court below. It provides: "Except as hereinafter provided, the several courts, as defined in this act, shall have and possess full and exclusive jurisdiction ...... (b) of all cases of adults charged with contributing to, or encouraging, or tending to cause, by any act of omission or commission, the delinquency, neglect or dependency of any child, or charged with any act of omission or commission with respect to any child, which act of omission or commission is a violation of any State law or ordinance of any city, borough or township".

That the legislature has attempted to bring within the exclusive jurisdiction of the juvenile court all cases

---

[2] Presumably by petition. See Section 4.

[3] It is doubtful whether such an act which did not apply generally would be constitutional.

[4] And the waiver must be in writing and signed by defendant.

involving adults which also involve children, which may be *properly* tried there, is clear. But we must find, if we can, a construction which is constitutional. Statutory Construction Act, Act of May 28, 1937, P. L. 1019 Art. IV, §52, 46 PS §552. And we must have due regard for the qualifying words at the beginning of the section: "Except as hereinafter provided."

Section 21 provides: "All provisions of this act relative to procedure in cases of children, as far as practicable, shall be construed as applying to cases against adults also coming under the jurisdiction of the juvenile courts, *when not inconsistent with other provisions of law relating to the conduct of adult cases.* Proceedings may be instituted by an interested party, or upon the court's own motion and a reasonable opportunity to appear shall be afforded the defendant". (Italics supplied).

As we have already pointed out "other provisions of law relating to the conduct of adult cases" stand squarely in the way of proceeding against adults for indictable offenses in the manner children are proceeded against, and of putting the burden on them of *demanding* a jury trial. And we deem the incompatabilities so fundamental we are of opinion the legislature never intended the juvenile court to have any jurisdiction over indictable offenses except that when one is noticed in the course of the exercise of its appropriate functions "the case shall be returned by the judge of the court to the proper court for trial" (section 5); that ordinarily the procedure under section 20 shall be as in other indictable offenses; and that the court below incorrectly held it was without jurisdiction.

The jurisdiction of the juvenile court in this case would be a wholly empty thing; the court would have no power to deal with it except to refer it to the district attorney to be proceeded with by indictment (see

*Mansfield's Case*, 22 Pa. Superior Ct. 224, 234) and trial in the quarter sessions.

The next question is whether the evidence was sufficient to sustain the conviction.

The burden was on the Commonwealth to prove the substance of the indictment viz. that defendant unlawfully contributed to the delinquency of Anna Marie Cassidy by unlawfully detaining her "during a period of thirteen hours [5] in a certain room and apartment."

The record, in our opinion, is devoid of any evidence that defendant exercised any restraint over the child whatever. The only evidence was that he met her, by accident, in the corridor of the apartment house where they both lived; that he suggested she spend the day at the apartment of his sister-in-law and gave her a quarter to get there; and that he saw her there three times during the day when he made brief visits none of which were for the purpose of seeing the girl.

There was no evidence the girl was a delinquent or that anything defendant did tended to make her one. There was some evidence he had an affectionate regard for her but none that either his conduct or motives were immoral. Insofar as the record reveals one, the only explanation for the episode was that offered by defendant—that on the previous evening the girl's father, in a drunken rage, had beaten her mother and struck the girl, and that she wanted to spend the day out of the father's reach. Defendant's participation in the scheme was ill-advised but, in our opinion, it was not criminal.

We think the demurrer should have been sustained.

The conviction is set aside and defendant discharged.

---

[5] Of course the Commonwealth was not bound to prove the exact number of hours.