*240 DECISION
INTRODUCTION
This Court must determine whether the Trial Court appropriately dismissed the appellant’s suit. The Trial Court deduced that the appellant insufficiently alleged the presence of subject matter jurisdiction. This Court agrees with this assessment and accordingly affirms the lower court decision.
APPELLATE HISTORY
On October 6, 2015, the appellant, Daniel E. Funmaker, by and through Attorney William F. Gardner, filed a timely appeal of the Trial Court’s final decision. See Order (Granting Mot. to Dismiss), CV 14-12 (HCN Tr. Ct., Aug. 7, 2015); see also HCN R. App. P. 7(b)(1), 11(a), available at http://www.ho-chunknation. com/government/judiciary/judicial-rules. aspx. This Court issued a limited scheduling order on October 9, 2015, in which it accepted the appeal, established briefing deadlines, and reserved the right to convene oral argument. Id., Rules 12, 15(a). The appellant filed its brief in support of appeal on November 5, 2015, but the ap-pellee failed to obtain counsel and file a timely response brief. Id., Rule 13(b). At the conclusion of the appellate briefing, the appellant requested an opportunity to present oral argument. Consequently, the Court, in its discretion, decided to proceed with oral arguments on December 19, 2015. Order (Notice of Oral Argument), SU 15-11 (HCN S.Ct., Nov. 10, 2015). Appellees filed a request to continue the proceeding on December 18, 2015, due to an inability to timely secure legal counsel, and the Court found the request to sufficiently and appropriately demonstrate unforeseen and emergency circumstances capable of justifying a scheduling modification. See Order (Granting Continuance & Notice of Oral Arguments), SU 15-11 (HCN S.Ct., Dec. 23, 2015). The Court scheduled oral arguments for February 20, 2016. Id. Attorney Sheila D. Corbine filed a Notice of Appearance on behalf of Appellees on February 11, 2016, and an expedited motion to request submission of a brief on February 12, 2016. On December 12, 2016, Appellee filed an objection to appellant’s motion to submit a brief and moved this Court to decide the matter on the record. The Court denied both motions and proceeded with oral arguments. See Order (Denying Appellees’ Mot. to Submit Br. & Denying Appellant’s Mot. to Decide on the R.), SU 15-11 (HCN S.Ct., Feb. 17, 2016). The parties appeared for oral arguments before Chief Justice Todd R. Matha, Associate Justice Tricia A. Zunker, and Associate Justice Samantha C. Skenandore on February 20, 2016. HCN R. App. P. 2(a). This Court filed a Notice of Extension For Decision of the Supreme Court on April 27, 2016 pursuant to HCN R. App. P. 16(b) to extend the date this Court would issue a decision in the present case to May 6, 2016. See Notice of Extension for Decision of the Supreme Court, SU 15-11 (April 27, 2016).
DECISION
The pertinent procedural rule in all trial level cases requires a plaintiff to include a “short, plain statement of the grounds upon which the Court’s jurisdiction depends.” HCN R. Civ. P. 3(A), available at http://www.ho-chunknation.com/ governmenVjudiciary/judicial-rules.aspx. In this regard, appellant alleged as follows:
The [Trial] Court has jurisdiction to determine this matter according to the following provisions of the HCN Constitution. Article I, Section 1 establishes the territory over which and within which the Court has authority to make deci *241 sions. Article I, Section 2 states in part “The jurisdiction of the Ho-Chunk Nation shall extend to all territory set forth in Section 1 of this Article and to any and all persons or activities therein_”
Article VII, Section 5 states “The Trial Court shall have original jurisdiction over all cases and controversies, both criminal and civil, in law or in equity, arising under the Constitution, laws, customs, and traditions of the Ho-Chunk Nation....” Article VII, Section 6 states “The Trial Court shall have the power to make findings of fact and conclusions of law. The Trial Court shall have the power to issue all remedies in law and in equity including in-junctive and declaratory relief....”
Compl., CV 14-12 (Nov. 13, 2014) at 2-3.
Here appellant sought declaratory relief regarding his legal ownership of the house located at W8867 Decorah Road, Black River Falls, WI 54165. “This case arises out of questions surrounding the testamentary transfer of a home previously owned by Ho-Chunk Nation member James Funmaker, Sr., who died on April 10, 2004.” See Order (Granting Mot. to Dismiss), CV 14-12 at 7. Appellant argued that the subject home is a Windfall Home and that the Trial Court possessed jurisdiction over the ownership of the home by virtue of the applicability of the Ho-Chunk Nation Legislature’s Resolution entitled “Windfall Homes Updating Housing Benefit Coordinating Policy, Revised and Restated as of 8-13-97” (hereinafter “Windfall Homes Policy”) over said home.[1] Appellant’s Br., SU 15-11 (Nov. 5, 2015) at 1. The parties presented evidence that, in the least, raised significant questions as to whether the home was in fact a Windfall Home, or rather, a home built through another housing program entitled the Ho-Chunk Nation Home Ownership Program (hereinafter “HOP”). Defs Br., CV 14-12 (July 10, 2015) at 2.
This Court possesses the constitutional authority “to interpret and apply the ... laws of the Ho-Chunk Nation,” and may render binding “conclusions of law.” HCN Const., art. VII, §§ 4, 7(a), available at http://www.ho-chunknation. com/government.aspx. Once a litigant files an initial pleading, the Trial Court becomes obligated to perform its most rudimentary inquiry. The Court must preliminarily determine whether the alleged dispute “aris[es] under the Constitution, laws, customs, [or] the traditions of the Ho-Chunk Nation.” Id., art. VII, § 5(a). In most instances, the Court must either discern or verify whether the Ho-Chunk Nation Legislature has “enacted a law to which the HCN Trial Court can apply to [a] case.” Ho-Chunk Nation v. Harry Steindorf et al, SU 00-04 (HCN S.Ct., Sept. 29, 2000) at 5. The existence of such a dispute “grants the HCN Courts subject matter jurisdiction,” id. at 3, and this jurisdictional underpinning must continue to exist at every stage of the litigation, including throughout an appeal. General Council Agency v. Pine Giroux, SU 15-10, 2015 WL 9855466, 13 Am. Tribal Law 230, 231 (HCN S.Ct., Dec. 22, 2015) at 2 (citing Sadat v. Mertes, 615 F.2d 1176, 1188 (7th *242 Cir.1980)).[2] A court should independently monitor whether subject matter jurisdiction persists since a judicial act taken in its absence is presumptively null and void. Arbaugh v. Y & H Corp., 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006).
No court can act outside the bounds of its established subject matter jurisdiction. See Muskrat v. United States, 219 U.S. 346, 356, 31 S.Ct. 250, 55 L.Ed. 246 (1911). Essentially, a court may exercise subject matter jurisdiction over a cause of action if constitutionally or statutorily empowered to hear such cases in general. See United States v. Cotton, 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). “Jurisdiction of the subject-matter, is power to adjudge concerning the general question involved, and is not dependent upon the state of facts which may appear in a particular case, arising, or which is claimed to have arisen, under that general question.”[3] Hunt v. Hunt, 72 N.Y. 217, 229 (1878).
The Trial Court held that it “is not convinced the home at issue is a Windfall Home and therefore, in the absence of an ordinance or other law granting the Court jurisdiction, the Court declines to exercise jurisdiction.” See Order (Granting Mot. to Dismiss), CV 14-12 at 1. On appeal, appellant alleged that “[t]he Trial Court had both the authority to hear the matter and a factual basis to support proceeding in this matter. By not doing so it erred.” Appellant’s Br., SU 15-11 at 4. This Court must therefore determine whether the Trial Court appropriately dismissed the appellant’s suit.
1. Standard of Review.
As an initial matter, the Court applies the appropriate standard of review for this appeal. Both parties anticipated that this Court would adjudge whether the Trial Court abused its discretion in rendering its findings. Once again, this Court attributes the continued confusion over the proper standard of review to this Court’s prior inconsistent and haphazard application of standards of review. In HCN v. Christopherson, SU 15-03 (HCN S.Ct., Sept. 10, 2015),[4] we restored the proper standard of review, the clearly erroneous standard of review, when an appellant challenges facts upon appeal. Id. at 8. Consequently, this Court reversed certain cases, in part, that inappropriately utilized the abuse of discretion standard within the context of a factual review of the trial level record. Id. at 10. Finally, this Court held that litigants may no longer rely upon these appellate decisions as either binding or persuasive case law in those instances when the analysis pertained to an examination of facts. Id.
The inconsistencies in the record are abundant. The Trial Court reviewed two (2) documents dated October 21, 1998, and March 3, 1999, purporting to evidence de *243 cedent’s designations of various successors and alternative successors of the subject home as a Windfall Home. However, the record does not contain decedent Mr. James Funmaker’s signed copy of the Windfall Home program’s requisite Windfall Home Retention and Maintenance Agreement. See Order (Granting Mot. to Dismiss), CV 14-12 at 9.[5] In addition, federal probate proceedings in support of appellant’s successful Motion to Dismiss in the lower court is inclusive of decedent’s “[tjrust real property located in the States of Wisconsin” and subjects the same to intestate disposition between sixteen (16) named heirs. In the Matter of the Estate of James Noah Funmaker, Order Determining Heirs & Decree of Distribution, Indian Probate No. P-00001-6917-IP (Dec. 21, 2005) at 2; see also Respondent’s Mot. to Dismiss, CV 14-12 (Dec. 22, 2014). However, the attached Bureau of Indian Affairs Inventory of Decedents Report Trust/Restricted Title Holdings, Part 1, includes reference to only one forty-acre parcel located on the reservation entitled “Wisconsin Public Domain” in Section 14, Township 21 West, Range 3 in Jackson County. Def’s Answer, CV 14-12 (Dec. 3, 2014). This legal description of the only property in Wisconsin identified in the decedent’s inventory of real property differs from any legal description or address of the subject home provided in the record.
The amounts to finance the construction of the home in the record are inconsistent with the parties’ arguments as to the status of the home. The record includes an Authorization for Construction for a project location of the home’s address in the decedent’s name. The Authorization for Construction appears under letterhead of the Ho-Chunk Nation Home Ownership Program dated July 17, 2000, and includes a Home Ownership Program Neiv Home Data Information for the Purposes of Ho-Chunk Nation Builders Risk Insurance with total building costs of $125,000.00. However, the record includes Ho-Chunk Nation Legislature minutes of August 13, 1997, wherein the Legislature passed a motion approving of the Windfall Homes Updating and Housing Benefit Coordination Policy, and the Windfall Home Retention and Maintenance Agreement that included the approval of $90,000.00 for each home. See Pi’s Suppl. Information Reply Regarding Residential Home Located at 8867 Decorah Road, Indian Mission, Town of Komensky, CV 14-12 (July 20, 2015) at 1.
Finally, the record includes a March 1998 letter from former Ho-Chunk Nation Vice-President Clarence Pettibone to Quentin Thundercloud, Director of Housing, indicating that Mr. James Funmaker, Sr. had been approved for a new Windfall Home on Lot # 31. See Order (Granting Mot. to Dismiss), CV 14-12 at 7. However, construction of said home occurred in 2000, and appellees produced various construction and insurance-related documents for the newly built home that reference only the Home Ownership Program—not the Windfall Home Program.[6]
*244 Ultimately, the Court recognizes the elephant in the room to he the absence of an agreement governing the newly built subject home. We recognize that documents, for various reasons, may go missing: however, the remaining exhaustive record does not clearly evidence whether the home is a Windfall home or not. The appellant failed to meet his burden to clearly establish this Court’s jurisdiction.
2. Ambiguity.
This Court need not express an opinion concerning the merits of the appellee’s claims. This Court only needs to determine whether appellee articulated an adequate basis upon which the Trial Court could permissibly exercise subject matter jurisdiction over the case. These grounds clearly did not exist within the initial pleading and throughout the remainder of the proceedings. The Court, however, carefully examined the appellant’s contentions within its exhaustive consideration of and deliberation upon the appeal. The records contains abundant inconsistencies as to whether the subject home is a Windfall Home governed by the Ho-Chunk Nation’s law, and therefore, within the subject matter jurisdiction of the Ho-Chunk Nation Courts. The record is ambiguous at best, therefore, we do not have clear error. To overturn the Trial Court’s decision “under the clearly-erroneous standard, we cannot meddle with a prior decision of this or a lower court simply because we have doubts about its wisdom or think we would have reached a different result. To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must ... strike us as wrong with the force of a five-week-old, unrefrigerated dead fish.” Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228, 233 (7th Cir. 1988). We need to have clear error, and the parties did not present any facts to demonstrate error and without that, we cannot reverse. This Court finds no need to remand for further inquiry. Therefore, the Court affirms the Trial Court’s decision.
AFFIRMED.
EGI HESKEKJET.

. We note that in properly applying the correct standard of review, this Court does not reach the question of whether the Windfall Home Retention and Maintenance Agreement, HCN Leg. Res. 8-13-97, falls within the scope of Art. VII, Sec. 5 of the Constitution to establish subject matter jurisdiction as the record does not support a finding that the home in question is, in fact, a Windfall Home. For example, the record does not contain decedent Mr. James Funmaker's signed copy of the Windfall Home program’s agreement—a requirement to participate in the program. See Order (Granting Mot. to Dismiss), CV 14-12 at 9.

. This Court references external case law as persuasive, not binding, authority, and in an attempt to demonstrate a consistent approach to basic legal principles. ”[O]nly decisions by this [C]ourt are limitations on the Trial Court.” Jacob LoneTree et al. v. Robert Funmaker, Jr. et al., SU 00-16 (HCN S.Ct., Mar. 16, 2001) at 4.

. Even more precisely, "[j]urisdiction in courts is the power and authority to declare the law. The very word, in its origin, imports as much; it is derived from juris and dico—I speak by the law.” Mills v. Commonwealth, 13 Pa. 627, 630 (1850).

.In Christopherson, this Court recognized the Supreme Court's historically inappropriate expansion and default use of the abuse of discretion standard coupled with the illogical over-application of the same when reviewing the lower court's fact-finding functions involving constitutional duty, not the exercise of discretion, Christopherson, SU 15-03 at 8.

. See also Windfall Homes Policy, § 3.

. Construction and insurance exhibits referencing decedent or the subject home included in the record involve: the Ho-Chunk Nation Home Ownership Program’s Authorization for Construction dated July 17, 2000; a Home Ownership Program’s New Home Data Information for the Purpose of Ho-Chunk Nations Builders (sic) Risk Insurance, undated; an invoice from Hieb, Inc., Dick Hieb Homes to the Home Ownership Program dated October 17, 2000; a Ho-Chunk Nation Home Ownership Program Authorization for Payment Draw per invoice from Dick Hieb Homes dated October 18, 2000; an Accord. Certificate of Liability Insurance bearing the certificate holder as "Ho Chunk Housing Department Atm; Homeownership Program” dated May 15, 2000; a Ho-Chunk Nation Disburse *244 ment Voucher from the “HOP” for "1st Yr Ins. WFH 1434” and "DPA WFH 1434” dated March 21, 2001; and the Germantown Mutual Insurance Company’s Mortgagee Policy Set Mailer Sheet for "Ho-Chunk Nation Home Ownership Program” dated October 12, 2004.